## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative of the Estate of Prince Rogers Nelson, | Court File No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Eric Ziani; Marcel Peters; Piet Van Ryckeghem; Frederic Bianco; DOE 1 (d/b/a Eye Records); DOE 2 (d/b/a Lovesigne); DOE 3 (d/b/a House Quake); and DOES 4-20, | |
| Defendants. | |

Plaintiffs Paisley Park Enterprises, Inc. ("Paisley Park") and Comerica Bank & Trust, N.A., as Personal Representative of the Estate of Prince Rogers Nelson ("Personal Representative") (collectively, "Plaintiffs"), by and through their attorneys, Fredrikson & Byron P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, hereby bring this Complaint against Defendants Eric Ziani; Marcel Peters; Piet Van Ryckeghem; Frederic Bianco; DOE 1 (d/b/a Eye Records); DOE 2 (d/b/a Lovesigne); DOE 3 (d/b/a House Quake); and DOES 4-20.

## INTRODUCTION

1.      Prince Rogers Nelson, the international superstar and renowned artist known as "Prince," died on April 21, 2016, at Paisley Park in Chanhassen, Minnesota.  A

probate matter for the estate of Prince Rogers Nelson (the "Prince Estate") is pending in Carver County, Minnesota, Court File No. 10-PR-16-46.

2.      Plaintiff Comerica Bank & Trust, N.A. is the Personal Representative of the Prince Estate.  Comerica is a fiduciary charged with protecting Estate assets for the benefit of the heirs.  As the Personal Representative, Comerica "has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as the decedent had immediately prior to death."  Minn. Stat. § 524.3-703.

3.      Plaintiff Paisley Park Enterprises, Inc. is a Minnesota corporation that was owned by Prince during his lifetime and is now owned by the Prince Estate.

4.      A prodigious and successful songwriter and musician, Prince wrote and recorded thousands of songs during his lifetime.  Prince chose what songs to release and when to release them.  Some songs Prince recorded were not released during his lifetime.  Prince's artistry also extended to his live performances, which showcased his distinctive style and showmanship.  Prince chose when to release recordings of his live shows and when to keep those performances limited to the attending concertgoers.  Prince carefully protected his work and image through intellectual property, including copyrights and trademarks.

5.      Defendants are an interrelated group of bootleggers who are actively conspiring to cash in on the worldwide popularity of Prince and his music.  Defendants are in the business of selling or offering to sell, distributing, and trafficking in bootlegs of unreleased studio recordings of Prince music and unauthorized recordings of live Prince performances.  To help sell these bootleg recordings, Defendants deliberately rely on

Prince's distinctive trademarks as well as Prince's name, image, and likeness, for which they have neither license nor authorization to use. Instead, Defendants seek to trade on the substantial goodwill associated with Prince for their own unlawful gain. Through these illegal efforts, Defendants have wrongfully profited from Prince's fame and creative work. On information and belief, Defendants' infringement has been willful, intentional, and in bad faith.

6.      Defendants' intentional conduct is causing irreparable harm to the Prince Estate. As a result, Plaintiffs have filed this action seeking monetary damages and injunctive relief to put a stop to Defendants' illicit operation.

## PARTIES

7.      Paisley Park Enterprises, Inc. is a Minnesota corporation with offices at 7801 Audubon Road, Chanhassen, Minnesota 55317, and is a wholly-owned subsidiary of the Prince Estate.

8.      Comerica Bank & Trust, N.A., is the court-appointed Personal Representative of the Prince Estate.

9.      On information and belief, Eric Ziani resides at 112 quai Pierre Scize, Lyon, France and Rue de Coralita, Res Tisa, Oyster Pond, 97150 Saint Martin, France. Ziani plays a central role in Defendants' bootlegging operation.

10.      On information and belief, Marcel Peters resides in or around the villages of Heteren or Eygelshoven in the Netherlands. Peters has offered to sell Defendants' bootleg recordings through the e-mail address <purplepartyman@hotmail.com>.

3

11.    On information and belief, Piet Van Ryckeghem resides in or around the Belgian city of Bruges. Van Ryckeghem has offered to sell Defendants' bootleg recordings through the e-mail address <brother.pete@skynet.be>.

12.    On information and belief, Frederic Bianco resides in or around Bagnol sur Ceze, near Marseilles, France.  His precise whereabouts are unknown.  On information and belief, Bianco is one of the principals behind Eye Records.

13.    On information and belief, DOE 1 is doing business as "Eye Records," a bootleg music label used by one or more of the Defendants to distribute and traffic in Prince bootlegs.

14.    On information and belief, DOE 2 is doing business as "Lovesigne," a person, group of persons, or entity, including at least Ziani and possibly one or more of the other Defendants, that promotes, sells, and offers to sell bootleg Prince music. Lovesigne sells or offers to sell bootleg Prince music through an Internet store located at <newlovesigne.com>.  Ziani is the registrant of this website.

15.    On information and belief, DOE 3 is doing business as "House Quake," a person, group of persons, or entity, including at least Ziani and possibly one or more of the other Defendants, that sells or offers to sell bootleg Prince music.

16.    On information and belief, DOES 4-20 are co-conspirators whose identities and addresses are presently unknown to Plaintiffs and are not presently capable of ascertainment, but who are or will be involved in the distribution, trafficking, sale, or offers to sell bootleg Prince music.  In the event that Defendants provide or Plaintiffs

acquire additional credible information regarding the identities of these DOES, Plaintiffs will take appropriate steps to amend the Complaint.

## VENUE AND JURISDICTION

17.     This is an action for copyright infringement, violations of the Civil Anti-Bootlegging Act (17 U.S.C. § 1101), violations of the Lanham Act, violations of the Minnesota Deceptive Trade Practices Act (Minn. Stat. §§ 325D.44-45), and violations of the right of publicity.

18.     The Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

19.     Venue is proper under 28 U.S.C. § 1391(b) and (c) because Defendants are, on information and belief, aliens who are engaged in infringing activities and causing harm within this District by advertising, offering to sell, and selling infringing goods to consumers in Minnesota.

20.     Defendants are subject to personal jurisdiction in Minnesota because of their commercial internet activity, and because they committed acts of copyright infringement, trademark infringement and dilution, and violations of the Minnesota Deceptive Trade Practices Act and right of publicity in this District, resulting in harm to Plaintiffs in this District.  Specifically, Defendants have sold infringing goods to residents of Minnesota and each of the Defendants directly targets business activities toward consumers in the United States, including Minnesota, at least by advertising, offering to sell, and selling Prince bootlegs over the Internet, through which Minnesota residents may purchase and have purchased the bootlegs.

## FACTS

**A.      Prince's Fame and Intellectual Property Rights**

21.     Prince Rogers Nelson is one of the best-selling artists of all time, having sold over 100 million records worldwide.  He was a musical innovator who integrated a wide variety of styles in his work, including funk, rock, R&B, new wave, soul, psychedelia, and pop.  Prince won eight Grammy Awards, a Golden Globe, six American Music Awards, and an Academy Award.  He was inducted into the Rock and Roll Hall of Fame in 2004 and the Rhythm and Blues Music Hall of Fame in 2016.  Prince's live performances were iconic, exhibiting his unmatched talent and showmanship.

22.     In addition to his music, Prince was famous for his distinctive look, style, and iconography.  His name and likeness are instantly recognizable around the world and are uniquely associated with him.  Following Prince's untimely death, there has been tremendous public interest in Prince and, particularly, in his unreleased music and his live performances.

23.     A prodigious and successful songwriter, Prince wrote thousands of songs. Prince secured his rights in his music through copyright registrations.  Similarly, Prince protected his name and his unique symbol (known as the Prince Symbol or Love Symbol) through trademark registrations.  The right of publicity also protects Prince's name, image, and likeness.

24.     Prince wrote the music and lyrics for the 100 works at issue in this case, and is an author of the musical compositions (hereafter "Prince Works").  The Prince Works at issue are identified in Paragraphs 48, 51, and 54 below.

6

25.     The Prince Works have been registered with the United States Copyright Office and, following Prince's death, are owned by the Prince Estate.  Proof of ownership is attached as **Exhibits A**, **B**, and **C**.  Prince occasionally did business under the assumed names "Controversy Music," "Girlsongs," "Parisongs," "Tionna Music," and "Emancipated Music, Inc." during his lifetime, which is reflected in some of the copyright registrations.

26.     Plaintiffs also have a number of registered trademarks related to Prince's name and the Love Symbol.  Plaintiff Paisley Park Enterprises owns United States Trademark Registration No 2,151,863 for the trademark PRINCE® for use with "phonograph records, audiotapes, compact discs, and videotapes embodying musical performances"; United States Registration No. 5,344,001 for the trademark PRINCE® for use with "[m]usical sound recordings [and] audio visual recordings featuring music"; and United States Trademark Registration No. 5,438,807 for the trademark PRINCE® for use with "[e]ntertainment services, namely, providing non-downloadable prerecorded music."  Copies of the United States Registration Certificates for the above-listed trademarks are attached as **Exhibit D**.

27.     Paisley Park Enterprises has used the trademark PRINCE® in connection with musical sound recordings, audio visual recordings, phonographic records, audiotapes, compact discs and videotapes embodying musical performances since 1978, and have invested considerable resources to develop brand equity, public recognition, and goodwill in the mark.

28.     The trademark PRINCE® is a famous trademark widely recognized by consumers as an identification of Prince and his music.

29.     Additionally, over the years, Prince Rogers Nelson and Paisley Park Enterprises have spent hundreds of thousands of dollars policing the PRINCE® trademark and enforcing their trademark rights.  As a result of these efforts, consumers associate the PRINCE® trademark with Plaintiffs.  The PRINCE® trademark is a highly valuable asset.

30.     In addition, Paisley Park has used the trademark on the right depicting the Prince Symbol with sound recordings and entertainment services since 1992, and has invested considerable resources to develop brand equity, public recognition, and goodwill in the mark.  The Prince Symbol is a highly valuable asset uniquely associated with Plaintiffs.



31.     Plaintiff Paisley Park Enterprises owns United States Trademark Registration No. 1,822,461 for the Prince Symbol for use with "sound recordings; namely, prerecorded audio cassettes, phonograph records and compact discs featuring music and entertainment; [and] pre-recorded videotapes featuring music and entertainment"; United States Trademark Registration No. 5,344,002 for the Prince Symbol for use with "musical sound recordings"; and United States Trademark Registration No. 1,849,644 for the Prince Symbol for use with "entertainment services;

namely, live performances by a musical group." Copies of the United States Registration Certificates for the above-listed trademarks are attached as **Exhibit E**.

32.    The Prince Symbol is a famous trademark widely recognized by consumers as an identification of Prince and his music.

33.    Over the years, Paisley Park Enterprises has spent hundreds of thousands of dollars policing the Prince Symbol and enforcing its trademark rights. As a result of these efforts, consumers associate the Prince Symbol with Plaintiffs. United States Trademark Registration Nos. 1,822,461 and 1,849,644 are incontestable and each trademark is a highly valuable asset.

34.    Plaintiffs have carefully monitored and policed the use of these copyrights (hereafter, "Prince Copyrights"), trademarks (hereafter, "Prince Trademarks"), and other intellectual property, and never assigned or licensed their intellectual property to any of the Defendants in this matter or otherwise authorized Defendants' use.

**B.    Defendants' Conspiracy to Violate Plaintiffs' Intellectual Property Rights**

35.    Willfully ignoring Plaintiffs' well-established intellectual property rights, Defendants have engaged in an international conspiracy to sell, offer to sell, distribute, and traffic in unauthorized, bootleg Prince music. Along the way, Defendants have exploited Prince's distinctive name, symbol, image, and likeness without permission. Defendants have looked to capitalize on the increased interest in Prince and his music following his premature death.

36.     Defendants' operation openly flouts U.S. intellectual property laws and has irreparably harmed Plaintiffs by adversely impacting the market for authorized uses of Prince music and recordings of live performances.

37.     On information and belief, Defendants had knowledge of the Prince Trademarks when Defendants began promoting, offering to sell, selling, distributing, and trafficking in Prince bootlegs.  Indeed, Defendants knowingly, willfully, intentionally, and maliciously adopted and used identical, substantially identical, or confusingly similar imitations of the Prince Trademarks to capitalize on the fame and goodwill associated with the Prince Trademarks.  Defendants sought to free ride and otherwise trade on the enormous goodwill and reputation of Plaintiffs embodied in the Prince Trademarks.

38.     Defendants have specifically arranged their activities to conceal themselves and the full scope of their counterfeiting and bootlegging operation by, for example, relying on fictitious names.  Defendants' maneuvering has made it difficult to learn all of their true identities and the exact interworking of their network.

39.     Nevertheless, there are numerous linkages between the Defendants and their online activities that suggest that Defendants' bootlegging operation arises out of the same transaction or occurrence, or the same series of transactions and occurrences.

40.     On information and belief, Defendants' bootlegging conspiracy encompasses at least three primary activities:  (1) releasing unauthorized bootleg Prince music through a record label called "Eye Records"; (2) offering for sale and selling bootleg Prince music through an Internet store at <newlovesigne.com>; and (3) other online advertising activities calculated to promote the sale and distribution of

10

Defendants' bootleg Prince music.  Defendants' conspiracy is a deliberate violation of Plaintiffs' intellectual property rights.

### i.       *Defendants' Bootleg Label*

41.      Through Plaintiffs' monitoring and policing of their intellectual property, Plaintiffs identified DOE 1 as an entity doing business as Eye Records.  Eye Records is a purported music label operated by Defendants that sells or offers to sell, distributes, and traffics in bootlegs of Prince music.

42.      Eye Records' profile on Discogs.com—an online music database and marketplace—confesses that Eye Records is a "Bootleg label dedicated to Prince."  A screen shot of the webpage is reproduced below:



43.    Eye Records uses this logo or substantially similar logos to identify its label:



44.    Each compilation released by Eye Records makes prominent use of Prince Trademarks, as well as Prince's name, image, and likeness in the promotion and sale of the bootleg compilation with the intent of creating an association between Eye Records, Prince, and the famous Prince Trademarks.  Words or images that are identical to or substantially indistinguishable from the Prince Trademarks are counterfeit and dilute the

goodwill associated with the Prince Trademarks.  Those that are substantially and confusingly similar to one or more of the Prince Trademarks are infringing.

45.    Since Prince's untimely death in April 2016, Eye Records has released a substantial amount of unauthorized Prince music.  Eye Records' Discogs profile states that the label released 18 Prince compilations from 2016 to the present.

46.    For purposes of this Complaint, Plaintiffs have identified three illustrative compilations of unreleased studio recordings of Prince music that were released by Eye Records without Plaintiffs' permission after Prince died (collectively, "Blast From The Past Compilations").  Each compilation infringes on the Prince Copyrights by reproducing and distributing Prince's musical compositions.  Each compilation also violates Plaintiffs' trademarks and right of publicity by using Prince's name, image, likeness, and distinctive Prince Trademarks to confuse consumers and trade on Prince's fame for Defendants' own unlawful gain.

47.    Eye Records released *Blast From The Past 4.0* in 2017.  The album front and rear covers for the four-CD set, bearing Eye Record's logo, are reproduced below:



48.     Among the many Prince songs contained in *Blast From The Past 4.0*, at least the following 26 songs, which were reproduced and distributed without Plaintiff's authorization, are registered with the United States Copyright Office and are owned by the Prince Estate (see **Exhibit A**):

| Title | Registration Number(s) |
|---|---|
| **101** | PA0000397409 |
| **Around the World in a Day** | PA0000255663 |
| **Baby Go-Go** | PA0000328032 |
| **Big Tall Wall** | PAu001479165 |
| **Can't Stop This Feeling I Got** | PA0000498325 |
| **Dance Electric** | PA0000269472 |
| **Data Bank** | PA0000509902 |
| **Eternity** | PA0000330491 |
| **Feel U Up** | PA0000446743 |
| **Girl O My Dreams** | PA0000523666 |
| **Glamorous Life** | PA0000225846 PA0000227146 |
| **Jungle Love** | PA0000224129 |
| **La, La, La, He, He Hee** | PA0000322107 |
| **Mia Bocca** | PA0000332581 |
| **Mutiny** | PA0000263090 PA0000294417 |
| **Paisley Park** | PA0000255664 |
| **Power Fantastic** | PA0000669560 |
| **Rough** | PAu000706478 |
| **Sex Shooter** | PA0000236643 |
| **She's Always in my Hair** | PA0000259277 |
| **Soft and Wet** | EU 697098 |
| **Telepathy** | PA0000332163 PAu000926556 |
| **The Scream of Passion** | PA0000263091 |
| **U Got the Look** | PA0000339613 |
| **We Can Funk** | PA0000498320 |
| **When Doves Cry** | PA0000220373 PA0000225932 |

49.     The album covers for *Blast From The Past 4.0* contain unauthorized uses of Prince's image along with infringements and counterfeits of Prince Trademarks.

50.     Eye Records released *Blast From The Past 5.0* later in 2017.  The album covers for the four-CD set, bearing Eye Record's logo, are reproduced below:



51.     Among the many Prince songs contained in *Blast From The Past 5.0*, at least the following 30 songs, which were reproduced and distributed without Plaintiff's authorization, are registered with the United States Copyright Office and are owned by the Prince Estate (see **Exhibit B**):

| Title | Registration Number(s) |
|---|---|
| **18 and Over** | PAu002026835 |
| **By Alien Means** | PAu001152963 |
| **Come** | PA0000731860 |
| **Come Home** | PA0000448478 |
| **Cream** | PA0000549273 |
| **Deliverance** | PAu003896418 |
| **Down** | PAu001805924 |
| **Elephant Box** | PA0000547765 |
| **Funky** | PAu001326961 |
| **Get Wild** | PA0000705145 |
| **Heaven Must be Near** | PA0000547761 |
| **I am** | PAu003896538 |

| If I had a Harem | PAu001166396 |
|---|---|
| If I Luv U 2nite | PA0000752389 |
| Jadestone | PA0000547764 |
| No One Else | PAu003903136 |
| Pain | PAu001731963 |
| Paris 17984302 | PAu001688038 |
| Pink Cashmere | PA0000669968 |
| | PA0000677258 |
| Positivity | PA0000377933 |
| Pretzelbodylogic | PA0002003095 |
| Rave Un2 the Joy Fantastic | PA0001199877 |
| She Spoke 2 Me | PA0000813179 |
| Slappy Dappy | PA0000547763 |
| Sunrise Sunset | PAu003903133 |
| The Sex of It | PAu001326960 |
| Touch Me | PAu003903134 |
| U | PAu001474070 |
| Vicki Waiting | PA0000427518 |
| | PA0000433155 |
| Whispering Dandelions | PA0000547762 |

52.     The album covers for *Blast From The Past 5.0* include unauthorized uses of Prince's image along with infringements and counterfeits of Prince Trademarks covering Prince's name and the Prince Symbol.

53.     Near the end of 2017, Eye Records released *Blast From The Past 6.0*.  The album covers for the four-CD set, bearing Eye Record's logo, are reproduced below:



54.     Among the many Prince songs contained in *Blast From The Past 6.0*, at least the following 44 songs, which were reproduced and distributed without Plaintiff's authorization, are registered with the United States Copyright Office and are owned by the Prince Estate (see **Exhibit C**):

| Title | Registration Number(s) |
| --- | --- |
| **(<o>) No** | PAu001081258 |
| **(<o>) No** | PA0000377938 |
| **17 Days** | PA0000220372 |
| **18 & Over** | PAu002026835 |
| **A Million Miles (I Love You)** | PA0000244009 |
| **Alphabet St.** | PA0000377936 |
| | PA0000371276 |
| **Anna Stesia** | PA0000377935 |
| **Cool Love** | PA0000397408 |
| **Daddy Pop** | PA0000549270 |
| **Damn U** | PA0000608657 |
| **Desire** | PA0000263094 |
| **Diamonds and Pearls** | PA0000549272 |
| **Escape (Free yo Mind from the Rat Race)** | PA0000381584 |
| **Feel U Up** | PA0000446743 |
| **Glam Slam** | PA0000377934 |
| **High Fashion** | PA0000263089 |
| **Horny Pony** | PA0000535945 |

| | |
|---|---|
| **If the Kid Can't Make you Come** | PAu000615142 |
| | PA0000224130 |
| **Insatiable** | PA0000549276 |
| **Live 4 Love** | PA0000549277 |
| **Look At Me, Look At U** | PA0002022558 |
| **Love 2 the 9's (Edit)** | PA0000608664 |
| **Love 89** | PAu001148323 |
| **Love's no Fun** | PA0000506560 |
| **Million $ Show** | PA0002002369 |
| **Money Don't Matter 2 Night** | PA0000585808 |
| | PA0000549275 |
| **Mutiny** | PA0000263090 |
| | PA0000294417 |
| **My Name is Prince** | PA0000608651 |
| **Nothing Compares 2 U** | PA0000261000 |
| **Once Upon a Time** | PA0000532605 |
| **Positivity** | PA0000377933 |
| **Purple Rain** | PA0000217254 |
| | PA0000238407 |
| **Schoolyard** | PAu001547992 |
| **Sexy MF** | PA0000608650 |
| **Sister** | PA0000085238 |
| **Something Funky (This House Comes)** | PAu001547989 |
| **Sticky Wicked** | PA0000398217 |
| **Strollin'** | PA0000549274 |
| **The Scream of Passion** | PA0000263091 |
| **The Voice** | PA0000668440 |
| | PA0000561571 |
| **Times Squared (Sticky Wicked)** | PA0000532604 |
| **Walk Don't Walk** | PA0000549279 |
| **Willing and Able** | PA0000549278 |
| | PA0000590500 |
| **Yo Mister** | PAu001106275 |

55.     The album covers for *Blast From The Past 6.0* include unauthorized uses of

Prince's image along with infringements and counterfeits of Prince Trademarks covering

Prince's name and the Prince Symbol.

56.     Since Prince's death in 2016, Eye Records has also released at least the following compilations of recordings of live Prince performances without the Prince Estate's permission (collectively, "Live Performance Compilations").  These compilations violate the Civil Anti-Bootlegging Act by distributing and trafficking in Prince's live musical performances without Plaintiffs' permission, and violate Plaintiffs' trademark and right of publicity rights by using Prince's name, image, likeness, and distinctive Prince Trademarks to confuse consumers and trade in on Prince's fame for Defendants' own unlawful gain.

57.     Eye Records released *Prince Atlanta* in 2016.  The album covers for the two-CD set, bearing Eye Record's logo, are reproduced below:



58.     Images of the two CDs themselves are also reproduced below:



59.     On information and belief, *Prince Atlanta* contains live recordings of "Prince in his last-ever show."

60.     The album covers and CD images for *Prince Atlanta* include unauthorized uses of Prince's image along with infringements and counterfeits of the Prince Trademarks covering Prince's name and the Prince Symbol.

61.     Eye Records released *Prince and the Revolution: Boston Metro* in 2017. The album covers for the two-CD set, bearing Eye Record's logo, are reproduced below:



62.     On information and belief, *Boston Metro* contains live musical recordings of "Prince and the Revolution Live at the Metro in Boston (MA), USA on 3 April 1986."

63.     The album covers for *Boston Metro* include unauthorized uses of Prince's image along with infringements and counterfeits of the Prince Trademarks covering Prince's name.

64.     Eye Records released *Prince: 3 Nights, 3 Shows* in 2016.  The album covers for the four-CD set, bearing Eye Record's logo, are reproduced below:



65.     On information and belief, *3 Nights, 3 Shows* contains live musical recordings of Prince at the "47th Montreux Jazz Festival 2013 – July 13, 14, 15."

66.     The album covers for *3 Nights, 3 Shows* include unauthorized uses of Prince's image along with infringements and counterfeits of the Prince Trademarks covering Prince's name.

67.     Eye Records released *Prince and the Revolution: Rainmaker—Purple Rain Deluxe* in 2017.  The album covers for the three-CD set, bearing Eye Record's logo, are reproduced below:



68.    On information and belief, *Rainmaker* contains live recordings of Prince from a Linndrum Studio Jam on October 13, 1982; Rehearsal for the First Avenue 1983 Benefit Concert from July to August 1983; First Avenue Benefit Concert on August 3, 1983; Santa Monica Civic Auditorium Benefit Concert on February 25, 1985; and Funky Rehearsal Jam in Spring 1985.

69.    The album covers for *Rainmaker* include unauthorized uses of Prince's image along with infringements and counterfeits of the Prince Trademarks covering Prince's name and Prince Symbol.

70.    Eye Records released *Prince and the Revolution: Worcester 1985* in 2016. The album covers for the three-CD set, bearing Eye Record's logo, are shown below:



71.     On information and belief, *Worcester 1985* contains live recordings of Prince and the Revolution from Worcester, March 28, 1985, and Miami, April 7, 1985.

72.     The album covers for *Worcester 1985* include unauthorized uses of Prince's image along with infringements and counterfeits of the Prince Trademarks covering Prince's name and the Prince Symbol.

73.     The releases from Eye Records, including but not limited to those described above, are bootlegs that infringe Plaintiffs' intellectual property rights.

### ii.     *Defendants' Illegal Internet Store*

74.     One or more of the Defendants offer for sale, sell, distribute, and traffic in bootlegs of Prince music without Plaintiffs' permission through the website <newlovesigne.com>, including but not limited to bootlegs under the Eye Records label.

75.     Defendant Ziani is the registrant of the domain name <newlovesigne.com>. Plaintiffs identified Ziani as the registrant with a DNS WHOIS lookup, which retrieves the information a registrant enters when registering a website, reproduced below:

```
Domain Name: newlovesigne.com
Registry Domain ID: 1529083068_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.1and1.com
Registrar URL: http://1and1.com
Updated Date: 2016-11-19T08:23:41.000Z
Creation Date: 2008-11-18T13:08:14.000Z
Registrar Registration Expiration Date: 2018-11-18T13:08:14.000Z
Registrar: 1&1 Internet SE
Registrar IANA ID: 83
Registrar Abuse Contact Email: abuse@1and1.com
Registrar Abuse Contact Phone: +1.8774612631
Reseller:
Domain Status: clientTransferProhibited https://www.icann.org/epp#clientTransferProhibited
Domain Status: autoRenewPeriod https://www.icann.org/epp#autoRenewPeriod
Registry Registrant ID:
Registrant Name: Eric Ziani
Registrant Organization:
Registrant Street: 112 quai Pierre Scize
Registrant City: Lyon
Registrant State/Province:
Registrant Postal Code: 69005
Registrant Country: FR
Registrant Phone: +33.690763005
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: mutiny8@gmail.com
Registry Admin ID:
Admin Name: Eric Ziani
Admin Organization:
Admin Street: 112 quai Pierre Scize
Admin City: Lyon
Admin State/Province:
Admin Postal Code: 69005
Admin Country: FR
Admin Phone: +33.690763005
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: mutiny8@gmail.com
```

76.     According to the DNS WHOIS lookup, at the time the domain name was

registered, Ziani was listed as the registrant, with an address at 112 quai Pierre Scize,

Lyon, France, and an e-mail address of <mutiny8@gmail.com>.

77.     On information and belief, Ziani is one of the masterminds behind the

Defendants' conspiracy, including at least by operating this Internet store, possibly in

conjunction with one or more of the other Defendants.  Ziani's involvement in the

conspiracy is extensive, including offering to sell, selling, and distributing bootleg Prince

music.  To promote his illegal activities, Ziani intentionally relies on Prince Trademarks as well as Prince's name, image, and likeness without permission to do so.  In short, Ziani is a brazen bootlegger.

78.     Ironically, a Google Maps view of Ziani's registered address in Lyon, France shows that the adjacent address has a door with the word "bootlegger," as well as two posters that include the words "After Club Rock" and "Bootlegger," reproduced below:



79.     As part of Plaintiffs' investigation into Defendants' activities, Plaintiffs' investigators purchased multiple bootleg Prince compilations through the <newlovesigne.com> website, to be shipped to Minnesota.

80.   The website <newlovesigne.com> is password protected.  To receive access to the website, the investigator's buyer sent a request to the e-mail <mutiny8@gmail.com> for a login account to the website.  This e-mail address used the Google username "House Quake" and at times signed the e-mail with the alias "LOVESIGNE."  The buyer was given access codes for the website.

81.   Behind the login screen, the website <newlovesigne.com> offers to sell and sells Prince bootleg compilations, including those from Eye Records.  On information and belief, these compilations include Prince works covered by copyright registrations owned by Plaintiffs.  Moreover, to sell these illegal, bootleg albums, the website prominently displays images of Prince and counterfeits or infringements of the Prince Trademarks.  Screen captures of illustrative portions of the website, including the website's top banner and a page offering to sell *Blast From The Past 6.0*, are reproduced below:





82.    The website <newlovesigne.com> also provides free downloads of Prince

songs.  A screen capture of this portion of the website is produced below:



83.    A buyer downloaded the famous Prince song *1999* through this portion of

the website.

84.     The buyer first purchased two bootleg Prince compilations from

<newlovesigne.com>.  The buyer's payment was processed through PayPal, and was sent

to "ZIANI ERIC (MUTINY8@GMAIL.COM)."  A screen capture of the PayPal receipt

is reproduced below, with the buyer's personal information redacted:



85.     These bootlegs were received in Minnesota.  The return address on the

packaging states that the package came from ZIANI ERIC at Rue de Coralita, Res Tisa,

Oyster Pond, 97150 Saint Martin, France.  A picture of the package is provided below,

with the recipient's address redacted:



86.     Another buyer purchased Eye Record's bootleg *Blast From The Past 6.0* through the <newlovesigne.com> website, to be shipped to Minnesota.  Once again, the PayPal receipt reveals that the payment was processed to <MUTINY8@GMAIL.COM>, which the email receipt linked to "ZIANI ERIC."  A screen capture of the PayPal receipt and email receipt, in French, are reproduced below, with the buyer's personal information redacted:



87.     Accordingly, at least Ziani, and possibly one or more of the other Defendants, manages the <mutiny8@gmail.com> address, sells and offers to sell Prince bootlegs through the <newlovesigne.com> website, and ships those bootlegs into the United States, including to Minnesota.  These activities infringe the Prince Copyrights and Prince Trademarks, dilute the Prince Trademarks, violate the Civil Anti-Bootlegging Act, violate the Minnesota Deceptive Trade Practices Act, and violate Prince's right of publicity held by the Prince Estate.

### iii.        *Defendants' Illicit Promotional Activities*

88.    In addition to the <newlovesigne.com> website, at least Ziani and one or more of the other Defendants rely on online aliases to promote their Prince bootlegs and further the conspiracy to offer to sell and sell Prince bootlegs without Plaintiffs' permission.

89.    For example, on information and belief, DOE 2 (d/b/a Lovesigne) is a person, group of persons, or entity including at least Ziani, and possibly one or more of the other Defendants, actively involved in the Defendants' conspiracy.  Lovesigne has an online presence through at least Facebook and Twitter.

90.    Lovesigne's Facebook page, which is no longer active, revealed clear links to Ziani.  In the post reproduced below, dated September 13, Lovesigne states that he lives in Saint Martin and France.  On information and belief, the post is from 2017, the year Hurricane Irma hit the Caribbean, as mentioned by Lovesigne:



91.     Lovesigne used his Facebook page to promote releases of Eye Records

bootlegs.  In doing so, Lovesigne made prominent use of images of Prince along with

Prince Trademarks without permission to promote the sale of Eye Records bootlegs.  An

illustrative example, promoting the release of *Blast From The Past 6.0*, is reproduced

below:



92.     As shown in the image above, Lovesigne's Facebook page also linked viewers to the website <www.newlovesigne.com>.

93.     A Twitter page associated with the handle "@Lovesigne" is also reproduced below:



94.     Lovesigne's Twitter page displays the Prince Symbol along with the

description "BOOTLEGS ALL OVER THE WORLD."  The page also states that the user

is located in Caraïbe, which, on information and belief, is French for Caribbean—another

link between Lovesigne and Ziani.

95.     Lovesigne also uses the e-mail address <mutiny8@gmail.com>, which is

used by Ziani, to promote, offer for sale, sell, distribute, and traffic in Eye Records

bootlegs.

96.     On March 22, 2018, Lovesigne sent a promotional e-mail from the e-mail

address <mutiny8@gmail.com>, announcing available pre-orders for Eye Records

compilations titled *Purple Underground Volume Three* and *Purple Underground Volume*

*Six*.  The e-mail is reproduced as **Exhibit F**.  Lovesigne made prominent use of Prince's

name, image, and works without Plaintiffs' permission to promote and offer to sell the

bootleg recordings.  For example, the image below was used in the e-mail to promote and

offer to sell the bootleg compilation.



97.     In sum, on information and belief, Lovesigne offers to sell, sells,

distributes, and traffics in bootleg Prince music, including those under the Eye Records

label.  These activities intentionally infringe Plaintiffs' copyrights, infringe and dilute the

Prince Trademarks, violate the Civil Anti-Bootlegging Act, violate the Minnesota

Deceptive Trade Practices Act, and violate Prince's right of publicity held by the Prince

Estate.

98.     Next, Lovesigne and at least Ziani are also linked to a Google Plus user

with the username "House Quake."  On information and belief, DOE 3 (d/b/a House

Quake) is a person, group of persons, or entity including at least Ziani, and possibly one

or more of the other Defendants, that is actively involved in the Defendants' conspiracy.

99.    On July 14, 2017, House Quake posted in the public Google Plus community "NPG + // For Prince Fans Worldwide" an offer for preorders for bootleg Prince CDs.  Specifically, House Quake offered preorders for *Blast From The Past 4.0* and *Blast From The Past 5.0*.  The post promoted "8 CDs of fantastic outtakes and studio material" and stated "this double-whammy consists of previously unreleased material – NEW and TOTALLY EXCLUSIVE!"  House Quake's July 14, 2017 Google Plus posting, with associated comments, is reproduced in full in **Exhibit G**.

100.    House Quake's post included two promotional photos, virtually identical to the album covers for *Blast From The Past 4.0* and *Blast From The Past 5.0* from Eye Records—but the front covers lack Eye Records' identifying information.  Consumers at the point of sale or post sale would understandably, but mistakenly, believe that the albums were released or authorized by Plaintiffs.  The pictures posted by House Quake to Google Plus are reproduced below:



101.    On information and belief, House Quake is linked to at least Lovesigne and Ziani.  In the comments to House Quake's July 14, 2017 post, House Quake identified

itself as "Lovesigne," and directed users that wish to buy the bootleg Prince CDs to a private website.  To access the website, House Quake directed users to send an email to <mutiny8@gmail.com>, after which the user would be provided with an access code. This is the same process Plaintiffs' investigator used to purchase bootleg Prince albums at <newlovesigne.com>.  Specifically, the comment states "you can have all the bootlegs prince cd or dvd on my private website My website is for sale ONLY. if you are interested send me an e-mail to: MUTINY8@GMAIL.COM and I will send you your access codes."  **Exhibit G**.

102.    Later in the comments, House Quake also states that he can ship these Prince bootlegs "worldwide."

103.    On information and belief, House Quake offers to sell, sells, distributes, and traffics in bootleg Prince recordings, including at least those under the Eye Records label.  These activities intentionally infringe Plaintiffs' copyrights, infringe and dilute the Prince Trademarks, violate the Civil Anti-Bootlegging Act, violate the Minnesota Deceptive Trade Practices Act, and violate Prince's right of publicity held by the Prince Estate.

104.    Defendant Marcel Peters is an additional co-conspirator, using the e-mail address <purplepartyman@hotmail.com> to promote, offer for sale, sell, distribute, and traffic in Eye Records Prince bootlegs.

105.    On June 20, 2017, Peters sent a promotional e-mail from the e-mail address <purplepartyman@hotmail.com>, announcing two new releases from Eye Records of compilations of live Prince recordings:  *Prince and the Revolution: Rainmaker—Purple*

*Rain Deluxe* and *Prince and the Revolution: Boston Metro*.  The e-mail is reproduced as

**Exhibit H**.  Peters relied on Prince's name and works to promote and offer to sell the

bootleg recordings.

106.    Piet Van Rychekghem (a.k.a. "Brother Pete") is an additional co-

conspirator, using the e-mail address <brother.pete@skynet.be> to promote, offer for

sale, sell, distribute, and traffic in Eye Records bootlegs.

107.    On December 4, 2017, Van Ryckeghem sent a promotional e-mail from the

e-mail address <brother.pete@skynet.be>, announcing Eye Records' release of *Blast*

*From The Past 6.0*.  The e-mail is reproduced as **Exhibit I**.  The e-mail states "Eye

Records R Proud 2 Present This Brand New 4CD Release:  Blast From The Past 6.0 Gold

Edition," and is signed "Brother Pete."

108.    The body of the email also included the following images:





109.    Finally, attached to Van Ryckeghem's e-mail was a "flyer" with a track list for the release, also reproduced in **Exhibit J**.

110.    Van Ryckeghem sent a similar e-mail from the e-mail address <brother.pete@skynet.be> on June 13, 2018, announcing the release of a compilation titled *The Purple Underground Vol 7 (3CD by Eye Records)*.  Again, Van Ryckeghem's e-mails feature Prince's name, image, and works in an attempt to solicit preorders for the bootleg compilation.  The e-mail is reproduced as **Exhibit K**.

111.    Frederic Bianco is believed to be one of the main conspirators behind Eye Records.  His precise whereabouts are currently unknown.

112.    On information and belief, Ziani's co-conspirators (Peters, Van Ryckeghem, and Bianco) have offered to sell, sold, distributed, and trafficked in bootleg Prince recordings, including at least those under the Eye Records label.  These activities intentionally infringe Plaintiffs' copyrights, infringe and dilute the Prince Trademarks, violate the Civil Anti-Bootlegging Act, violate the Minnesota Deceptive Trade Practices Act, and violate Prince's right of publicity held by the Prince Estate.

### iv.        *The Remaining Doe Defendants*

113.    On information and belief, DOES 4-20 are additional, yet to be identified co-conspirators involved in the offer for sale, selling, distribution, or trafficking of Prince bootlegs, including those released under the Eye Records label.

114.    On information and belief, one or more of DOES 4-20 provided the unauthorized Prince source material to the Defendants to be unlawfully promoted and released.  On information and belief, one or more of DOES 4-20 have access to unreleased Prince recordings and, without authorization, are trafficking in and distributing the recordings to the Defendants to be released without Plaintiffs' permission.

115.    On information and belief, one or more of DOES 4-20 recorded Prince's live performances or reproduced copies of those performances without permission, and then trafficked in and distributed those unauthorized copies to the Defendants to be unlawfully promoted and released.

116.    House Quake's July 14, 2017 Google Plus public post to the Google Plus forum "NPG+// For Prince Fans Worldwide" refers to a person or persons that provided

the Defendants with the unauthorized Prince source material to fuel the Defendants'

bootlegging conspiracy.  House Quake wrote:  "Eternal gratitude goes 2 our many

contacts 4 providing the unique material and 2 our friends 4 contributing important

details 4 the assembly. U no who UR. ;-)."  **Exhibit G**.

117.     Defendants have acted in bad faith, with malicious intent, and in knowing

disregard of Plaintiffs' rights.  By virtue of their unlawful conduct, Defendants have

made profits and gains to which they are not entitled in law or equity.

**COUNT ONE**
**Copyright Infringement of Multiple Works**

118.     Plaintiffs incorporate the above allegations.

119.     The Prince Works constitute copyrightable subject matter under the laws of

the United States under 17 U.S.C. § 102(a)(2).

120.     The 100 Prince Works have been registered with the United States

Copyright Office as indicated in **Exhibits A**, **B**, and **C**.

121.     Defendants have reproduced and distributed, and continue to reproduce and

distribute, the Prince Works in violation of the Prince Estate's exclusive rights under

17 U.S.C. § 106.

122.     As a result, Defendants have committed copyright infringement and

continue to infringe the copyrights in the Prince Works under 17 U.S.C. § 501.

123.     Defendants will continue to infringe the Prince Works unless enjoined by

this Court.

124.    As a result of Defendants' copyright infringement, the Prince Estate is entitled to recover actual damages and Defendants' profits or, at the Prince Estate's election, statutory damages under 17 U.S.C. § 504, as well as costs and attorneys' fees under 17 U.S.C. § 505.

125.    The Prince Estate is also entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT TWO
### Violation of the Civil Anti-Bootlegging Statute, 17 U.S.C. § 1101

126.    Plaintiffs incorporate the above allegations.

127.    Defendants have sold or offered to sell, distributed or offered to distribute, and trafficked in recordings of live musical Prince performances without the permission of Prince or his Estate, including at least with the Live Performance Compilations.

128.    On information and belief, at least one of the Defendants fixed the sounds or images of the live Prince performances in a tangible medium, or reproduced copies or phonorecords of such performances from an unauthorized fixation.

129.    On information and belief, the fixations of the live Prince performances were made without the consent of Prince during his lifetime, or his Estate following his death.

130.    Defendants' actions violate the civil anti-bootlegging statute, 17 U.S.C. § 1101.

131.    As a result of Defendants' violations of the civil anti-bootlegging statute, the Prince Estate is entitled to a permanent injunction under 17 U.S.C. § 502, impoundment of all copies of Defendants' Prince live recording bootlegs under 17 U.S.C.

§ 503(a)(1)(A), money damages under 17 U.S.C. § 504, and an award of full costs and attorneys' fees incurred in the action under 17 U.S.C. § 505.

**COUNT THREE**
**Violation of Section 32(1) of the Lanham Act**
**Trademark Counterfeiting and Infringement**

132.   Plaintiffs incorporate the above allegations.

133.   Plaintiff Paisley Park Enterprises owns United States Trademark Registration Nos. 2,151,863, 5,344,001, and 5,438,807 for the trademark PRINCE® as indicated in **Exhibit D**.

134.   Paisley Park Enterprises has used the trademark PRINCE® in connection with musical sound recordings, audio visual recordings, phonographic records, audiotapes, compact discs and videotapes embodying musical performances since 1978, and have invested considerable resources to develop brand equity, public recognition, and goodwill in the mark.  Consumers associate the PRINCE® trademark with Plaintiffs.

135.   Plaintiff Paisley Park Enterprises owns United States Trademark Registration Nos. 1,822,461, 5,344,002, and 1,849,644 for the Prince Symbol as indicated in **Exhibit E**.

136.   Paisley Park Enterprises has used the Prince Symbol with sound recordings and entertainment services since 1992 and have invested considerable resources to develop brand equity, public recognition, and goodwill in the Prince Symbol.  On his death, any rights Prince had in the Prince Symbol passed to the Prince Estate.  Consumers associate the Prince Symbol with Plaintiffs.  United States Trademark Registration Nos. 1,822,461 and 1,849,644 are incontestable.

137.    Defendants are counterfeiting and infringing one or more of the Prince Trademarks by, among other things, using the PRINCE® trademark and the Prince Symbol to advertise, promote and sell their bootleg music.

138.    Defendants' concurrent counterfeiting and infringing activities are likely to cause consumer confusion, mistake, and deception.

139.    Consequently, Defendants' actions constitute trademark infringement and counterfeiting under Section 32 the Lanham Act, 15 U.S.C. § 1114.

140.    Defendants acted deliberately, knowing their actions were in violation of Plaintiffs' rights.  Defendants deliberately and willfully traded upon the goodwill associated with the Prince Trademarks, and misled people into thinking that the music they sold was put out by, or authorized or endorsed by, Plaintiffs.

141.    Defendants' conduct is causing, and will continue to cause, irreparable harm to Plaintiffs unless it is enjoined by this Court.  Seizure of the bootleg goods and counterfeit marks is also warranted under 15 U.S.C. § 1116.

142.    Plaintiffs have suffered damages as a result of Defendants' actions in an amount to be proven at trial or, in the alternative, statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c) in the amount of $2,000,000 for each and every use of the Prince Trademarks.

143.    The Court should find that this is an exceptional case under 15 U.S.C. § 1117 and award Plaintiffs treble damages and attorneys' fees.

## COUNT FOUR
## Violations of Section 43(a) of the Lanham Act

144.    Plaintiffs incorporate the above allegations.

145.    Defendants are using the trademark PRINCE®, the Prince Symbol, the name "Prince Rogers Nelson" and the identity, image, and indicia of the late artist in interstate commerce without the consent of Plaintiffs.

146.    Defendants' conduct is likely to cause consumers at the point of sale or post sale to believe erroneously that Prince, his Estate, or Plaintiffs are the source of Defendants' unauthorized goods, or that the goods are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

147.    The unauthorized conduct by Defendants

    (a)    is likely to cause confusion, mistake or deception at the point of sale or post sale as to the affiliation, connection or association of Prince, his Estate, or Plaintiffs with Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by the Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); and

    (b)    misrepresents the nature, characteristics, or qualities of Defendants' goods, services, or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

148.    Defendants' actions have caused and will continue to cause Plaintiffs to suffer damage to their business, reputation, goodwill, profits, and the strength of their

trademarks, and is causing ongoing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

149.    Defendants' actions constituting unfair competition, false designation of origin, false representation and false endorsement are willful and deliberate.

150.    Plaintiffs have suffered damages as a result of Defendants' actions in an amount to be proven at trial.

151.    The Court should find this case exceptional under 15 U.S.C. § 1117 and award Plaintiffs treble damages and attorneys' fees.

**COUNT FIVE**
**Violations of Section 43(c) of the Lanham Act**

152.    Plaintiffs incorporate the above allegations.

153.    For decades, Paisley Park Enterprises has exclusively and continuously promoted and used the Prince Trademarks throughout the United States.  These Trademarks therefore became nationally famous and distinctive, well-known symbols of Paisley Park Enterprises and Prince well before Defendants offered their bootlegs for sale.

154.    Defendants are making use in commerce of trademarks that dilute or are likely to dilute the distinctiveness of the Prince Trademarks by eroding the public's exclusive identification of the Prince Trademarks with Plaintiffs and otherwise lessening the capacity of the Prince Trademarks to identify and distinguish Plaintiffs' goods.

155.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Prince Trademarks or to cause dilution of the Trademarks to the great and irreparable injury of Plaintiffs.

156.    Because Defendants have caused, and are likely to continue causing, irreparable injury to Plaintiffs' goodwill and business reputations and dilution of the distinctiveness and value of the Prince Trademarks in violation of 15 U.S.C. § 1125(c), and because this is an exceptional case, Plaintiffs are entitled to injunctive relief and to Defendants' profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT SIX
### Violation of Minnesota Deceptive Trade Practices Act; Minn. Stat. § 325D.44

157.    Plaintiffs incorporate the above allegations.

158.    PRINCE® and the Prince Symbol are trademarks as defined in Minn. Stat. § 325D.43.

159.    Defendants have engaged in numerous deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, including but not limited to:

(a)    Engaging in conduct that causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendants' products at the point of sale or post sale;

(b)     Engaging in conduct that causes a likelihood of confusion or

misunderstanding as to affiliation, connection or association between

Plaintiffs and Defendants at the point of sale or post sale; and

(c)     Using deceptive representations in connection with their products.

160.    Defendants willfully engaged in the above-described trade practices,

knowing them to be deceptive.

161.    As a result of Defendants' conduct, Plaintiffs are entitled to an injunction

and attorneys' fees under Minn. Stat. § 325D.45.

## COUNT SEVEN
## Violation of the Right of Publicity

162.    Plaintiffs incorporate the above allegations.

163.    Defendants violated the right of publicity of Prince Rogers Nelson owned

by Plaintiffs.

164.    The right of publicity limits the public use of a person's name, likeness or

identity for commercial purposes.  The right of publicity prevents another from using a

celebrity's name, image or likeness in connection with a product, thereby creating a false

and misleading impression that the celebrity is endorsing the product.

165.    Prince Rogers Nelson owned a right of publicity during his lifetime.  In his

death, a common law right of publicity is owned by the Estate.

166.    Defendants used Prince's identity to promote and sell their products,

including, but not limited to using images of the late superstar, and making prominent use

of the color purple and other indicia of Prince.

167.    Defendants' use of the name, image, and likeness of Prince Rogers Nelson was not authorized by Plaintiffs.  Defendants acted deliberately for their own gain at the expense of the Estate.

168.    Plaintiffs have been damaged by Defendants' conduct in an amount to be proven at trial.

169.    Plaintiffs are entitled to an injunction preventing Defendants from further exploiting Prince's name, image and likeness for their own financial gain.

## JURY DEMAND

Plaintiffs demand a jury trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Enter an Order in favor of Plaintiffs on their claims against Defendants;

2.    Enter a preliminary and permanent injunction preventing Defendants and all of those acting in concert with them from:

(a)    offering for sale, selling, distributing, or trafficking in bootleg Prince music, including but not limited to unreleased Prince recordings or unauthorized recordings of live Prince performances;

(b)    using any Prince Trademark, or Prince's name, likeness, or image, or any other copy, reproduction, colorable imitation, or simulation of the same, on or in connection with goods or services without Plaintiffs' permission;

(c)     using any Prince Trademark, or Prince's name, likeness, or image, or source designation of any kind on or in connection with goods or services that is a copy, reproduction, colorable imitation, or simulation, or confusingly similar to Plaintiffs' Trademarks, name, likeness or image;

(d)     using any Prince Trademark, or Prince's name, likeness, or image, or source designation of any kind on or in connection with goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs, or are in any way connected to or related to Plaintiffs;

(e)     using any Prince Trademark, or Prince's name, likeness, or image, or source designation of any kind on or in connection with goods or services that dilutes or is likely to dilute the distinctiveness of the Prince Trademarks;

(f)     creating, maintaining, operating, joining, and participating in an Internet store used to promote and distribute bootleg music, and using counterfeits or infringements of the Prince Trademarks in furtherance of the same;

(g)     further infringement of Plaintiffs' copyrights;

(h)     further violations of the Lanham Act;

(i)     further violations of the Minnesota Deceptive Trade Practices Act; and

(j)     further violations of Plaintiffs' right of publicity.

3.     Order Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve on Plaintiffs within thirty (30) days after entry of the injunction, a written report under oath describing in detail the manner in which Defendants have complied with the injunction, including ceasing all offering of goods under the PRINCE® trademark, the Prince Symbol and the identity of Prince Rogers Nelson as set forth above;

4.     Order Defendants to recall and surrender for destruction all products, advertisements, and other materials that infringe Plaintiffs' rights;

5.     Order Defendants to transfer the domain name <newlovesigne.com> to Plaintiffs; or order the domain name registrar—listed as 1&1 Internet SE for the <newlovesigne.com> domain—to disable the domain name and make it inactive and untransferable;

6.     Enter an Order that, upon Plaintiffs' request, any advertising services, financial institutions, payment processors, banks, escrow services, money transmitters, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts, advertising revenue accounts, sub-accounts, or money transfer systems used by Defendants in furtherance of their conspiracy, including but not limited to the PayPal account of Defendant Ziani, as well as any other related accounts of the same customer(s) and any other accounts which

transfer funds into the same financial institution, account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein;

7.     Enter an Order in favor of Plaintiffs and against Defendants for all damages in an amount to be determined at trial, including any applicable interest, including but not limited to damages under 17 U.S.C. § 504 and 15 U.S.C. § 1117;

8.     Enter an Order in favor of Plaintiffs and against Defendants for statutory damages under 15 U.S.C. § 1117(c) for each transaction carried out by Defendants under trademarks found to be counterfeit marks within the meaning of 15 U.S.C. § 1116(d), as well as seizure of the bootleg goods and counterfeit marks under 15 U.S.C. § 1116;

9.     Order the damages awarded be trebled for the Defendants' use of counterfeit trademarks under 15 U.S.C. § 1117;

10.    Declare this case exceptional under 15 U.S.C. § 1117;

11.    Enter an Order in favor of Plaintiffs and against Defendants for all of Plaintiffs' attorneys' fees, costs and expenses incurred herein;

12.    Enter an Order for any such other and further relief as allowed by law or determined to be just and appropriate.

Dated:  August 31, 2018

/s/ Lora M. Friedemann

Lora M. Friedemann (#259615)
Grant D. Fairbairn (#327785)
Barbara Marchevsky (#398256)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
lfriedemann@fredlaw.com
gfairbairn@fredlaw.com
bmarchevsky@fredlaw.com

*Attorneys for Plaintiffs*

64483165