UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative of the Estate of Prince Rogers Nelson,<br><br>   Plaintiffs,<br><br> v.<br><br>Eric Ziani; Marcel Peters; Piet Van Ryckeghem; Frederic Bianco; DOE 1 (d/b/a Eye Records); DOE 2 (d/b/a Lovesigne); DOE 3 (d/b/a House Quake); and DOES 4-20,<br><br>   Defendants. | Case No. 0:18-cv-2556 (DSD/TNL)<br><br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY** |

## INTRODUCTION

A district court may order expedited discovery for good cause if the need for the discovery outweighs any potential prejudice to the responding party. Plaintiffs seek to discover the Defendants' names and addresses in order to effectuate service. This is an appropriate use of expedited discovery, and any potential prejudice is offset by Defendants' ability to appear and object to the subpoenas.

Prior to bringing this motion, Plaintiffs attempted to communicate with Defendants regarding the lawsuit. Defendants did not respond. Given the illicit nature of Defendants' bootlegging enterprise, Plaintiffs do not expect them to willingly participate in this action. Thus, Plaintiffs seek discovery to move the case forward.

# BACKGROUND

## I. THE PARTIES

Prince Rogers Nelson, the international superstar and renowned artist known as "Prince," died on April 21, 2016, at Paisley Park in Chanhassen, Minnesota. (Doc. No. 1 (Complaint), ¶ 1.) A probate matter for the estate of Prince Rogers Nelson (the "Prince Estate") is pending in Carver County, Minnesota. (*Id.*)

Plaintiff Comerica Bank & Trust, N.A. is the Personal Representative of the Prince Estate. (*Id.*, ¶ 2.) Comerica is a fiduciary charged with protecting Estate assets for the benefit of the heirs. (*Id.*) Plaintiff Paisley Park Enterprises, Inc. is a Minnesota corporation that was owned by Prince during his lifetime and is now owned by the Prince Estate. (*Id.*, ¶ 3.)

The Complaint asserts claims against four individuals and 20 DOES. (*Id.*, ¶¶ 5, 9-16.) Defendants are an interrelated group of music bootleggers who are actively conspiring to cash in on the worldwide popularity of Prince and his music:

- **Eric Ziani** lives in France and plays a central role in this bootlegging operation. (*Id.*, ¶ 9.)

- **Marcel Peters** lives in the Netherlands and has offered to sell Defendants' bootleg recordings through the e-mail address <purplepartyman@hotmail.com>. (*Id.*, ¶ 10.)

- **Piet Van Ryckeghem** lives in Belgium and has offered to sell Defendants' bootleg recordings through the e-mail address <brother.pete@skynet.be>. (*Id.*, ¶ 11.)

- **Frederic Bianco** lives in France and is one of the principals behind Eye Records, the bootleg music label used by the Defendants to distribute and traffic in Prince bootlegs. (*Id.*, ¶¶ 12-13.)

- **DOE 1** is doing business as "**Eye Records**." (*Id.*, ¶ 13.)

- **DOE 2** is doing business as "**Lovesigne**" – a person, group of persons, or entity that promotes, sells, and offers to sell bootleg Prince music. (*Id.*, ¶ 14.) Lovesigne sells or offers to sell bootleg Prince music through an Internet store located at <newlovesigne.com>. (*Id.*)

- **DOE 3** is doing business as "**House Quake**" – a person, group of persons, or entity that sells or offers to sell bootleg Prince music. (*Id.*, ¶ 15.)

- **DOES 4-20** are co-conspirators whose names and addresses are presently unknown. (*Id.*, ¶ 16.)

## II.   THE PRINCE ESTATE OWNS EXTENSIVE INTELLECTUAL PROPERTY ASSETS

Prince is one of the best-selling artists of all time, having sold over 100 million records worldwide. (Doc. No. 1, ¶ 21.) He was a musical innovator who integrated a wide variety of styles in his work, including funk, rock, R&B, new wave, soul, psychedelia, and pop. (*Id.*) Prince's live performances were iconic, exhibiting his unmatched talent and showmanship. (*Id.*)

In addition to his music, Prince was famous for his distinctive look, style, and iconography. (*Id.*, ¶ 22.) His name and likeness are instantly recognizable around the world and are uniquely associated with him. (*Id.*)

A prodigious and successful songwriter, Prince wrote thousands of songs and secured his rights in his music through copyright registrations. (*Id.*, ¶ 23.) Similarly, Prince protected his name and his unique symbol (known as the Prince Symbol or Love Symbol) through trademark registrations. (*Id.*) The right of publicity also protects Prince's name, image, and likeness. (*Id.*)

Prince wrote the music and lyrics for 100 works that are at issue in this case, and is an author of the musical compositions (hereafter, the "Prince Works"). (*Id.*, ¶ 24.) Most

3

of the Prince Works have been registered with the United States Copyright Office and, following Prince's death, are owned by the Prince Estate.  (*Id.*, ¶ 25.)

Plaintiffs also have a number of registered trademarks related to Prince's name and the Love Symbol.  (*Id.*, ¶¶ 26-27.)  The trademark PRINCE® is a famous trademark widely recognized by consumers as an identification of Prince and his music.  (*Id.*, ¶ 28.)

In addition, Paisley Park has used the trademark on the right depicting the Prince Symbol with sound recordings and entertainment services since 1992, and has invested considerable resources to develop brand equity, public recognition, and goodwill in the mark.  (*Id.*, ¶ 30.)



### III. DEFENDANTS ARE RUNNING A BOOTLEGGING RING AND VIOLATING THE PRINCE ESTATE'S IP RIGHTS

Defendants have engaged in an international conspiracy to sell, offer to sell, distribute, and traffic in unauthorized, bootleg Prince music.  (Doc. No. 1, ¶ 35.)  Along the way, Defendants have exploited Prince's distinctive name, symbol, image, and likeness without permission.  (*Id.*)

Defendants have specifically arranged their activities to conceal themselves and the full scope of their counterfeiting and bootlegging operation by, for example, relying on fictitious names.  (*Id.*, ¶ 38.)  Defendants' maneuvering has made it difficult to learn their true identities and the exact interworking of their network.  (*Id.*)  Nevertheless, there are numerous links between the Defendants and their online activities that suggest that

Defendants' bootlegging operation arises out of the same transaction or occurrence, or the same series of transactions and occurrences. (*Id.*, ¶ 39.)

Defendants' bootlegging conspiracy encompasses at least three primary activities: (1) releasing unauthorized bootleg Prince music through a record label called "Eye Records"; (2) offering for sale and selling bootleg Prince music through an Internet store at <newlovesigne.com>; and (3) other online advertising activities calculated to promote the sale and distribution of Defendants' bootleg Prince music. (*Id.*, ¶ 40.)

### A. Defendants' Bootleg Label

Through Plaintiffs' monitoring and policing of their intellectual property, Plaintiffs identified DOE 1 as an entity doing business as Eye Records. (Doc. No. 1, ¶ 41.) Eye Records is a purported music label that sells or offers to sell, distributes, and traffics in bootlegs of Prince music. (*Id.*) Eye Records' profile on Discogs.com – an online music database and marketplace – confesses that Eye Records is a "Bootleg label dedicated to Prince." (*Id.*, ¶ 42.)

Each compilation released by Eye Records makes prominent use of Prince trademarks, as well as Prince's name, image, and likeness. (*Id.*, ¶ 44.) Since Prince's untimely death in April 2016, Eye Records has released a substantial amount of unauthorized Prince music. (*Id.*, ¶ 45.) Eye Records' Discogs profile states that the label released 18 Prince compilations from 2016 to the present. (*Id.*)

For purposes of their Complaint, Plaintiffs identified three illustrative compilations of unreleased studio recordings of Prince music that were released by Eye Records after Prince died (collectively, "Blast From The Past Compilations"). (*Id.*, ¶ 46.)

Each compilation infringes on Prince copyrights by reproducing and distributing Prince's musical compositions. (*Id.*)  Each compilation also violates Plaintiffs' trademarks and right of publicity by using Prince's name, image, likeness, and distinctive Prince Trademarks to confuse consumers and trade on Prince's fame for Defendants' own unlawful gain. (*Id.*)

For example, Eye Records released *Blast From The Past 4.0* in 2017. (*Id.*, ¶ 47.) The album covers for the four-CD set, bearing Eye Record's logo, are reproduced below:



Among the many Prince songs contained in *Blast From The Past 4.0*, at least 26 songs are registered with the United States Copyright Office and owned by the Prince Estate. (*Id.*, ¶ 48.)  The album covers for *Blast From The Past 4.0* also contain unauthorized uses of Prince's image along with infringements and counterfeits of Prince trademarks. (*Id.*, ¶ 49.)  *Blast From The Past 5.0* and *Blast From The Past 6.0* similarly violate Plaintiffs' intellectual property rights. (*Id.*, ¶¶ 50-55.)

Since Prince's death in 2016, Eye Records has also released compilations of recordings of live Prince performances. (*Id.*, ¶¶ 56-73.)  These compilations violate the

6

civil anti-bootlegging statute (17 U.S.C. § 1101) by distributing and trafficking in Prince's live musical performances without Plaintiffs' permission, and violate Plaintiffs' trademark and right of publicity rights by using Prince's name, image, likeness, and distinctive Prince trademarks for Defendants' own unlawful gain. (*Id.*)

For example, Eye Records released *Piano & A Microphone - Prince Atlanta* in 2016, which contains live recordings of "Prince in his last-ever show." (*Id.*, ¶¶ 57-59.) The album covers for the two-CD set, bearing Eye Record's logo, are reproduced below:



The album covers for *Prince Atlanta* include unauthorized uses of Prince's image along with infringements and counterfeits of trademarks covering Prince's name and the Prince Symbol. (*Id.*, ¶ 60.)

### B.   Defendants' Illegal Internet Store

One or more of the Defendants offer for sale, sell, distribute, and traffic in bootlegs of Prince music through the website <newlovesigne.com>, including but not limited to bootlegs under the Eye Records label. (Doc. No. 1, ¶ 74.) Defendant Ziani is the registrant of the domain name <newlovesigne.com>. (*Id.*, ¶ 75.) Plaintiffs identified

7

Ziani as the registrant with a DNS WHOIS lookup, which retrieves the information a registrant enters when registering a website. (*Id.*) According to the DNS WHOIS lookup, Ziani has an address in Lyon, France and uses the <mutiny8@gmail.com> e-mail address. (*Id.*, ¶ 76.)

Ziani is one of the principals behind the Defendants' conspiracy, including at least by operating this Internet store. (*Id.*, ¶ 77.) Ziani's involvement in the conspiracy is extensive, including offering to sell, selling, and distributing bootleg Prince music. (*Id.*) To promote his illegal activities, Ziani intentionally relies on Prince trademarks as well as Prince's name, image, and likeness. (*Id.*) In short, Ziani is a brazen bootlegger. (*Id.*)

Ironically, a Google Maps view of Ziani's address in Lyon, France shows that the adjacent address has a door with the word "bootlegger," as well as two posters that include the words "After Club Rock" and "Bootlegger," reproduced below:



As part of their research into Defendants' activities, Plaintiffs' investigator purchased multiple bootleg Prince compilations through the <newlovesigne.com> website, to be shipped to Minnesota. (*Id.*, ¶ 79.) The website <newlovesigne.com> is password protected. (*Id.*, ¶ 80.) To receive access to the website, the investigator's buyer sent a request to the e-mail <mutiny8@gmail.com> for a login account to the website. (*Id.*) The buyer was given access codes. (*Id.*)

Behind the login screen, the website <newlovesigne.com> sells Prince bootleg compilations, including those from Eye Records. (*Id.*, ¶ 81.) These compilations include Prince music that is protected by Plaintiffs' copyright registrations. (*Id.*) Moreover, to sell these illegal, bootleg albums, the website prominently displays images of Prince and counterfeits or infringements of Prince trademarks. (*Id.*) Screen captures of illustrative portions of the website, including the website's top banner and a page offering to sell *Blast From The Past 6.0*, are reproduced below:



The website also provides free downloads of Prince songs. (*Id.*, ¶ 82.) A buyer downloaded the famous Prince song *1999* through this portion of the website. (*Id.*, ¶ 83.)

One buyer purchased two bootleg Prince compilations from <newlovesigne.com>. (*Id.*, ¶ 84.) The buyer's payment was processed through PayPal, and was sent to "ZIANI ERIC (MUTINY8@GMAIL.COM)." (*Id.*) These bootlegs were received in Minnesota. (*Id.*, ¶ 85.) The return address on the packaging states that the package came from ZIANI ERIC in Saint Martin, France. (*Id.*, ¶ 85.) A picture of the package is provided below, with the recipient's address redacted:



Another buyer purchased Eye Record's bootleg *Blast From The Past 6.0* through the <newlovesigne.com> website, to be shipped to Minnesota. (*Id.*, ¶ 86.) The PayPal receipt reveals that the payment was again processed to <MUTINY8@GMAIL.COM> and "ZIANI ERIC." (*Id.*)

10

C.   **Defendants' Illicit Promotional Activities**

In addition to the <newlovesigne.com> website, Ziani and other Defendants rely on online aliases to promote and sell Prince bootlegs. (*Id.*, ¶ 88.) For example, DOE 2 (d/b/a Lovesigne) is a person, group of persons, or entity including at least Ziani, and possibly one or more of the other Defendants, actively involved in the Defendants' conspiracy. (*Id.*, ¶ 89.) Lovesigne has an online presence through Facebook and Twitter, and it has used its Facebook page to promote Eye Records' releases. (*Id.*, ¶¶ 89-91.) In doing so, Lovesigne made prominent use of images of Prince along with Prince Trademarks to promote the sale of bootlegs. (*Id.*) An example, promoting the release of *Blast From The Past 6.0*, is reproduced below:



A Twitter page associated with "@Lovesigne" is also reproduced below:

[Screenshot of Twitter page for @LOVESIGNE, showing the Prince Symbol, "BOOTLEGS ALL OVER THE WORLD," location "CARAÏBE," Joined September 2009, 1,896 Tweets, 283 Following, 657 Followers, 70 Likes, "This account's Tweets are protected."]

(*Id.*, ¶ 93.) This webpage displays the Prince Symbol along with the description "BOOTLEGS ALL OVER THE WORLD." (*Id.*)

DOE 3 (d/b/a House Quake) is another person, group of persons, or entity that is actively involved in the Defendants' conspiracy. (*Id.*, ¶ 98.) On July 14, 2017, House Quake posted an offer for preorders for bootleg Prince CDs in the public Google Plus community "NPG + // For Prince Fans Worldwide." (*Id.*, ¶ 99.) There, House Quake offered preorders for *Blast From The Past 4.0* and *Blast From The Past 5.0*. (*Id.*) The post promoted "8 CDs of fantastic outtakes and studio material" and stated "this double-whammy consists of previously unreleased material – NEW and TOTALLY EXCLUSIVE!" (*Id.*)

12

House Quake is linked to at least Lovesigne and Ziani. (*Id.*, ¶ 101.) In the comments to House Quake's July 14, 2017 post, House Quake identified itself as "Lovesigne," and directed users that wish to buy the bootleg Prince CDs to a private website. (*Id.*) To access the website, House Quake directed users to send an e-mail to <mutiny8@gmail.com>, after which the user would be provided with an access code. (*Id.*) This is the same process Plaintiffs' investigators went through to purchase bootleg Prince albums from the website <newlovesigne.com>. (*Id.*) Specifically, the comment states "you can have all the bootlegs prince cd or dvd on my private website My website is for sale ONLY. if you are interested send me an e-mail to: MUTINY8@GMAIL.COM and I will send you your access codes." (*Id.*)

Defendant Peters is an additional co-conspirator, using the e-mail address <purplepartyman@hotmail.com> to promote, offer for sale, sell, distribute, and traffic in Eye Records Prince bootlegs. (*Id.*, ¶ 104.) On June 20, 2017, Peters sent a promotional e-mail announcing two new releases from Eye Records of compilations of live Prince recordings: *Prince and the Revolution: Rainmaker—Purple Rain Deluxe* and *Prince and the Revolution: Boston Metro*. (*Id.*, ¶ 105.) Peters relied on Prince's name and works to promote and offer to sell bootleg recordings. (*Id.*)

Defendant Van Ryckeghem (a.k.a. "Brother Pete") is another co-conspirator, using the e-mail address <brother.pete@skynet.be> to promote, offer for sale, sell, distribute, and traffic in Eye Records bootlegs. (*Id.*, ¶ 106.) On December 4, 2017, Van Ryckeghem sent a promotional e-mail announcing Eye Records' release of *Blast From The Past 6.0*. (*Id.*, ¶ 107.) The e-mail states "Eye Records R Proud 2 Present This Brand

13

New 4CD Release: Blast From The Past 6.0 Gold Edition," and is signed "Brother Pete." (*Id.*) Van Ryckeghem sent a similar e-mail on June 13, 2018, announcing the release of a compilation titled *The Purple Underground Vol 7 (3CD by Eye Records)*. (*Id.*, ¶ 110.) Again, Van Ryckeghem's e-mails feature Prince's name, image, and works in an attempt to solicit preorders for the bootleg compilation. (*Id.*)

Defendant Bianco is believed to be one of the main conspirators behind Eye Records. (*Id.*, ¶ 111.) Plaintiffs believe that he lives in France, but his precise whereabouts are currently unknown. (*Id.*)

DOES 4-20 are additional, yet to be identified co-conspirators involved in offering for sale, selling, distributing, or trafficking Prince bootlegs, including those released under the Eye Records label. (*Id.*, 113.) One or more of DOES 4-20 have access to unreleased Prince recordings and, without authorization, are trafficking in and distributing the recordings without Plaintiffs' permission. (*Id.*, ¶ 115.) House Quake's July 14, 2017 Google Plus post refers to the "contacts" that provided the Defendants with the unauthorized Prince source material, fueling Defendants' bootlegging conspiracy: "Eternal gratitude goes 2 our many contacts 4 providing the unique material and 2 our friends 4 contributing important details 4 the assembly. U no who UR. ;-)." (*Id.*, ¶ 116.)

### IV.   DEFENDANTS HAVE IGNORED PLAINTIFFS' EFFORTS TO COMMUNICATE REGARDING THIS LAWSUIT

Plaintiffs brought this lawsuit to expose Defendants' operation and put an end to it. As such, the Complaint asserts claims for copyright infringement, violation of the civil anti-bootlegging statute, trademark infringement, trademark counterfeiting,

14

trademark dilution, violation of the Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.44), and violation of the right of publicity. (Doc. No. 1, ¶¶ 119-169.)

As a group, Defendants are aware of the lawsuit. (Declaration of Grant D. Fairbairn ("Fairbairn Decl."), ¶ 2.) First, Plaintiffs sent copies of the Complaint by mail to Ziani's two known street addresses, along with waiver of service forms. (*Id.*, Ex. A.) Second, Plaintiffs sent courtesy copies of the Complaint by e-mail to Ziani, Peters, and Van Ryckeghem and requested that they provide street addresses to allow Plaintiffs to complete formal service. (*Id.*, Ex. B.) Third, Plaintiffs asked Defendants by e-mail to meet and confer regarding this motion. (*Id.*, Ex. C.)

Defendants did not respond. (*Id.*, ¶ 6.) Rather, they continued selling bootleg albums. A week after Plaintiffs filed suit, DOE 2 (Lovesigne) sent out an e-mail announcing a "big discount" on Prince bootlegs on its website. (*Id.*, Ex. D.) Moreover, Defendants sent threatening e-mails to Plaintiffs' buyers, stating "I know what you did!!!" and "WE KNOW WHAT YOU HAVE DID." (*Id.*, Ex. E.)

## ARGUMENT

### I. DISTRICT COURTS ALLOW EXPEDITED DISCOVERY WHERE THE REQUESTING PARTY SHOWS GOOD CAUSE

Ordinarily, parties may not seek discovery prior to conferring under Rule 26(f) of the Federal Rules of Civil Procedure. *Nilfisk, Inc. v. Liss*, No. 17-cv-1902 (WMW/FLN), 2017 WL 7370059, at *7 (D. Minn. June 15, 2017) (citing Fed. R. Civ. P. 26(d)(1)). A court may, however, order expedited discovery for good cause. *Id.* Although the Eighth Circuit has not yet adopted a standard for assessing good cause in this setting, this Court

has endorsed the Second Circuit's test, which considers the following five factors:

> (1) the concreteness of the plaintiff's showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation of privacy.

*See Strike 3 Holdings, LLC v. Doe*, No. 18-cv-0771 (DFW/HB), 2018 WL 2278110, at *3 (D. Minn. May 18, 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010)). Each good cause factor weighs in favor of early discovery in this case.

## II. GOOD CAUSE EXISTS FOR PLAINTIFFS' DISCOVERY BECAUSE IT IS NARROWLY TAILORED TO UNCOVER DEFENDANTS' NAMES AND ADDRESSES FOR SERVICE

Plaintiffs brought this motion because none of the Defendants have appeared. Indeed, Plaintiffs' attempts to communicate with Defendants and obtain service information have been met with silence. At this stage, Plaintiffs require limited discovery to complete service.

### A. The Complaint Asserts a *Prima Facie* Case for Seven Counts

The Complaint asserts actionable claims for copyright infringement, violation of the civil anti-bootlegging statute, trademark infringement, trademark counterfeiting, trademark dilution, violation of the Minnesota Deceptive Trade Practices Act, and violation of the right of publicity. (Doc. No. 1, ¶¶ 119-169.) Using copyright infringement as an example, the elements of a *prima facie* case are (1) ownership of a copyright and (2) copying of the original elements of the copyrighted work. *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011). Plaintiffs assert that (1) the Prince Estate owns the copyrighted Prince Works and (2) Defendants copied and

16

distributed the Prince Works without authorization. (Doc. No. 1, ¶¶ 24-25, 47-54, 119-125.) Thus, the Complaint states a *prima facie* case for copyright infringement.

Defendants run a bootleg record label that blatantly infringes the Prince Estate's intellectual property rights. In fact, Defendants' conduct is illegal under the criminal anti-bootlegging statute. *See* 35 U.S.C. § 2319A. Defendants have no reasonable defense to Plaintiffs' claims, and the first good cause factor favors early discovery.

### B. Plaintiffs' Proposed Discovery is Limited and Specific

As the Complaint shows, Plaintiffs were able to unearth several details about Defendants' bootlegging ring before filing suit. Street addresses, however, are harder to find. (Fairbairn Decl., ¶ 9.) Fortunately, Defendants have left electronic footprints for Plaintiffs to follow. (*Id.*, ¶ 10.) For example, Defendants promoted Eye Records' albums on Facebook and accepted payment through PayPal. (*Id.*)

Plaintiffs are seeking discovery for the limited purpose of identifying who is behind various online profiles connected to Defendants and serving them with process. The subpoenas attached as Exhibits F-M to the Fairbairn Declaration identify the online profiles and seek contact information for those accounts. Specifically, the subpoenas seek (1) identifying information (*e.g.*, names, e-mail addresses, phone numbers, and street addresses); and (2) IP logs, which Plaintiffs can then use to subpoena internet service providers (ISPs) for additional identifying information. (*Id.*, Exs. F-M.)

The PayPal subpoena also includes a request to identify the financial institution and account number attached to the e-mail address <mutiny8@gmail.com>. (*Id.*, Ex. I.) With that information, Plaintiffs can subpoena the financial institution and seek

17

identifying information about the account holder.  Because Plaintiffs do not yet know which financial institution to subpoena, they have prepared a form subpoena and ask that the Court authorize Plaintiffs to use that form once the financial institution's identity becomes known.  (*Id.*, Ex. N.)  Likewise, Plaintiffs do not yet know which ISPs to subpoena and ask that the Court authorize Plaintiffs to use a form subpoena for follow-up discovery from ISPs as well.  (*Id.*, Ex. O.)[1]

These requests are narrow and specific.  They are designed to obtain name and address information so that Plaintiffs can serve the Complaint.  This type of discovery is common in "Doe" cases.  *See Chevron Corp. v. Donziger*, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *2 (N.D. Cal. Aug. 22, 2013) (approving similar subpoenas to Yahoo! and Google).  By pulling back the curtain on Defendants' profiles, Plaintiffs may confirm connections between the Defendants or reveal additional individuals involved in the conspiracy who can then be added to replace the unknown DOES in the Complaint. Thus, the second good cause factor favors early discovery.

### C.   Plaintiffs Have Exhausted the Publicly-Available Means of Obtaining the Requested Information

As shown above, Plaintiffs uncovered two street addresses for Ziani during their pre-suit investigation. (Doc. No. 1, ¶¶ 9, 75-78, 85.)  Beyond Ziani, however, street

---

[1] Although the Communications Act (47 U.S.C.§ 551) generally prohibits a cable operator from disclosing personally identifiable information, there are exceptions to this prohibition, including when disclosure is made pursuant to a court order and the subscriber is notified.  *Strike 3 Holdings*, 2018 WL 2278110, at *5.  "Many courts have authorized subpoenas to be issued under § 551(c)(2)(B) when a plaintiff needs to ascertain from an ISP the identity of a defendant accused of copyright infringement."  *Id.*

addresses for the other Defendants have proven difficult to find. Plaintiffs asked Defendants for street addresses to send service, but Defendants did not respond. At this point, Defendants appear content to wait for Plaintiffs to find and serve them, necessitating this motion. Thus, the third good cause factor weighs in favor of discovery.

### D. The Subpoenaed Information is Necessary to Advance Plaintiffs' Claims.

Plaintiffs must learn Defendants' addresses to serve the Complaint. *Strike 3 Holdings*, 2018 WL 2278110, at *5. Without service, Plaintiffs cannot prosecute their claims. *Id.* Thus, the fourth good cause factor supports early discovery.

### E. Defendants Can Protect Whatever Privacy Interests They Might Have by Appearing and Objecting to the Subpoenas

Defendants' expectation of privacy in their names and addresses is outweighed by Plaintiffs' right to use the judicial process to pursue their claims. *Strike 3 Holdings*, 2018 WL 2278110, at *5. Plaintiffs will provide a copy of this motion and any discovery order to the Defendants through all known e-mail and street addresses. (Fairbairn Decl., ¶ 21.) If Defendants are concerned about the subpoenas and believe that they have privacy interests to protect, they can always appear and raise those objections. After all, the "best way for the Court to determine what protection [Defendants are] entitled to—if any—is for those parties to formally advance their arguments before the Court." *Strike 3 Holdings, LLC v. Doe*, Case No. 18-cv-00779-WMW-SER, slip op. at 5-6 (D. Minn. May 25, 2018) (attached to the Fairbairn Declaration as Exhibit P). Thus, the fifth good cause factor favors early discovery.

## CONCLUSION

Good cause exists for Plaintiffs' proposed discovery. Rather than stopping their illegal activity after learning of this lawsuit, Defendants doubled down. They immediately circulated another advertisement for bootleg albums and proceeded to threaten Plaintiffs' buyers. Defendants are not going to voluntarily appear, so Plaintiffs need to find them.

Based on the foregoing, the Court should grant leave for Plaintiffs to serve the subpoenas attached to the Fairbairn Declaration as Exhibits F-M and authorize Plaintiffs to serve follow-up subpoenas using the forms attached to the Fairbairn Declaration as Exhibits N-O once the identities of the relevant entities becomes known.

Dated:  October 12, 2018         */s/ Grant D. Fairbairn*
Lora M. Friedemann (#259615)
Grant D. Fairbairn (#327785)
Barbara Marchevsky (#398256)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
lfriedemann@fredlaw.com
gfairbairn@fredlaw.com
bmarchevsky@fredlaw.com

*Attorneys for Plaintiffs Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative of the Estate of Prince Rogers Nelson*

64974633