UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representatives of the Estate of Prince Rogers Nelson,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>Eric Ziani; Marcel Peters; Piet Van Ryckeghem; Frederic Bianco; DOE 1 (d/b/a Eye Records); DOE 2 (d/b/a Lovesigne); DOE 3 (d/b/a House Quake); and DOEs 4-20,<br><br>　　　　　　　Defendants. | Case No. 18-cv-2556 (DSD/TNL)<br><br>**ORDER** |

---

Grant D. Fairbairn, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 400, Minneapolis, MN 55402 (for Plaintiffs); and

No appearance made by or on behalf of Defendants.

---

This matter is before the Court on Plaintiffs' Motion for Expedited Discovery. (ECF No. 6). Because, with one exception, Plaintiffs have established that good cause exists for early discovery, the Court will grant Plaintiffs' motion in part and deny it in part.

## I. BACKGROUND

On August 31, 2018, Plaintiffs filed a complaint asserting violations of state and federal deceptive trade practice, trademark, and copyright laws. Compl. ¶¶ 118-69. (ECF No. 1). Plaintiffs allege that Defendants conspired to violate intellectual property rights

1

related to the musician Prince Rogers Nelson ("Prince"). Compl. ¶¶ 21-35. Plaintiffs are the personal representatives of Prince's estate ("Prince Estate"). Compl. ¶ 2.

The Prince Estate owns copyrights to musical works written by Prince, as well as the trademark PRINCE® for use with entertainment services and musical performances. Compl. ¶¶ 24–27. The Prince Estate also owns the trademark for the Prince Symbol. Compl. ¶ 30. Plaintiffs also assert that the right of publicity protects Prince's name, image, and likeness. Compl. ¶ 23. Plaintiffs spend considerable time and resources monitoring and enforcing their rights to the intellectual property owned by the Prince Estate. Compl. ¶ 34. Through their efforts, they determined that Defendants had repeatedly infringed upon the Prince Estate's intellectual property. Compl. ¶ 40.

Defendant DOE 1, d/b/a Eye Records, has been identified by Plaintiffs as a music label that sells bootleg copies of Prince Music. Compl. ¶. 41. Eye Records advertises itself as a "Bootleg label dedicated to Prince" on Discogs.com, an online music database and marketplace. Compl. ¶ 42. Eye Records claims to have released 18 compilations of Prince music since 2016. Comp. ¶ 45.

For purposes of their complaint, Plaintiffs identified several compilations of unreleased Prince Music that Eye Records released without permission. Compl. ¶ 46. Three of those compilations, entitled *Blast From The Past 4.0, Blast From The Past 5.0,* and *Blast From The Past 6.0*, contain at least 100 songs of unreleased studio recordings. Compl. ¶¶ 47-55. Through their investigation, Plaintiffs obtained album covers for each compilation. Compl. ¶¶ 47, 50, 53. Each cover contains images of Prince, the PRINCE® trademark, or

the Prince Symbol. Compl. ¶¶ 47, 49, 50, 52, 53, 55. Each of these compilations bears the logo for the Eye Records label. Compl. ¶¶ 47, 50, 53.

Eye Records has also released multiple compilations of live Prince performances without permission. Compl. ¶ 57, 59, 61, 62, 65, 66, 67, 68, 70. Each of those compilations also contains images of Prince, the PRINCE® trademark, or the Prince Symbol. Compl. ¶ 57, 60, 61, 63, 64, 66, 67, 69, 70, 72. Each compilation also bears the logo for the Eye Records Label. Compl. ¶¶ 57, 61, 64, 66, 67, and 70.

Bootleg compilations of Prince music released under the Eye Records label are available for sale through the website newlovesigne.com. Compl. ¶ 74. To purchase music from newlovesigne.com, a person must request a user name and password by sending an e-mail to mutiny8@gmail.com. Compl. ¶ 80. Once the user is able to log-in, he or she can access the website, which contains a number of images of Prince, the PRINCE® trademark, or the Prince Symbol. Compl. ¶ 81.

Plaintiffs used a DNS WHOIS lookup to obtain the information that the owner of the domain name newlovesigne.com entered when registering it. Compl. ¶ 75. Through their research, Plaintiffs determined that newlovesigne.com was registered to Eric Ziani, that it had a registered street address of 112 quai Pierre Scize, Lyon, France, and that it had a registered e-mail address of mutiny8@gmail.com. Compl. ¶ 75.

Plaintiffs' buyers ordered a number of different Prince bootleg compilations from newlovesigne.com and downloaded Prince music directly from the website. Compl. ¶¶ 79, 83, 86. Payment for those orders was processed through a PayPal account registered to the e-mail address of mutiny8@gmail.com and sent to Ziani. Compl. ¶ 84, 86. When the

3

bootleg compilations arrived in Minnesota, the return address indicated that the package came from Ziani. Compl. ¶ 85.

Defendants Marcel Peters and Piet Van Rychekhem promote the sale of Eye Records' bootlegged Prince music through their respective e-mails purplepartyman@hotmail.com and brother.pete@skynet.be. Compl. ¶ 104, 106. Promotional e-mails obtained by Plaintiffs indicate that each defendant uses Prince's name, image, works, the PRINCE® trademark, or the Prince Symbol to advertise Eye Records recordings. Compl. ¶¶ 105, 107. Plaintiffs also allege that Frederic Bianco is one of the "main conspirators" behind Eye Records. Compl. ¶ 111.

Defendant DOE 2, d/b/a Lovesigne, promotes the Eye Records label through a Facebook page and Twitter handle. Compl. ¶¶ 91, 93. Lovesigne uses Prince's name image, and works to promote the sale of the bootlegged Prince Music. Compl. ¶ 96. Lovesigne also uses the e-mail address mutiny8@gmail.com to arrange for the sale and distribution of bootlegged Prince music through the Eye Records label. Compl. ¶ 95.

Defendant DOE 3, d/b/a House Quake, promotes the sale of bootlegged Prince music through a Google Plus community. Compl. ¶ 99. In a July 14, 2017 post, House Quake identified itself as Lovesigne and instructed users to e-mail mutiny8@gmail.com if they wish to purchase bootlegged Prince music. Compl. ¶ 101. As with the other Defendants, House Quake uses images of Prince, the PRINCE® trademark, and the Prince Symbol to promote the sale of bootlegged Prince Music. Compl. ¶ 100. Plaintiffs allege that Defendants DOEs 4-20 are additional co-conspirators to the trafficking of Prince bootlegged music through Eye Records. Compl. ¶ 113.

After filing suit, Plaintiffs sent copies of their complaint to two street addresses associated with Ziani and provided courtesy copies to Ziani, Peters, and Van Ryckeghem by e-mail. (ECF No. 9-1). Plaintiffs requested that each individual provide a street address so that they could formally serve them with the complaint. (ECF No. 9-1). Approximately one month later, after no response, Plaintiffs again contacted Ziani, Peters, and Van Ryckeghem by e-mail and asked that they meet and confer regarding the current motion. (ECF No. 9-1). Defendants did not respond. (ECF No. 9-1).

Plaintiffs now seek to send subpoenas to Microsoft, Google, Facebook, PayPal, MixCloud, SoundCloud, Yahoo!, and Twitter, requesting names, mailing addresses, e-mail addresses, phone numbers, account creation dates, and IP logs of certain e-mail and social media accounts that Plaintiffs believe are affiliated with Defendants, including mutiny8@gmail.com, the Twitter handle Lovesigne, and the Google Plus handle House Quake. (ECF No. 9-1). Plaintiffs also seek permission to subpoena information regarding accounts and financial institutions associated with a PayPal account that they believe is affiliated with Defendants. Plaintiffs also seek permission, once they obtain IP logs, to subpoena internet service providers ("ISPs") associated with each account. (ECF No. 9-1).

## II. ANALYSIS

Litigants generally may "not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). But in certain cases, expedited discovery before a Rule 26(f) conference is appropriate, particularly when the plaintiff cannot identify the defendant without such discovery. *Strike 3 Holdings, LLC v. Doe*, 2018 WL 2278111 *1-*2, No. 18-cv-778 (D Minn. May 18, 2018). Expedited

discovery for purposes of serving a complaint is particularly relevant in copyright cases involving file sharing because "as a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they learn the identities of persons engaged in that activity." *In re Charter Commc'ns Inc., Subpoena Enf't Matter*, 393 F.3d 771, 775 n. 3 (8th Cir. 2005). Thus, when good cause permits, copyright owners can file a lawsuit against a "John Doe," along with a motion for third-party discovery to learn the identity of the otherwise anonymous defendant. *Strike 3 Holdings*, 2018 WL 2278111 at *2; *see also In re Charter Commc'ns*, 393 F.3d at 775 n. 3.

A number of courts have considered the following factors to determine whether good cause exists for early discovery:

(1) Whether the plaintiff has demonstrated a prima facie claim of actionable harm;

(2) The specificity of the discovery requests;

(3) The need for the subpoenaed information to advance the claim;

(4) Whether there are alternative means to obtain the subpoenaed information; and

(5) The objecting party's right of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010); *see also Strike 3 Holdings*, 2018 WL 2278111 at *3 (applying standard to early discovery motion in Minnesota district court). Overarching this analysis is a balance between the moving party's need for the information against the First Amendment interests of the person whose information is sought. *Arista Records, LLC*, 604 F.3d at 118-19.

The first factor weighs in favor of Plaintiffs. They have established a prima facie case of copyright infringement. To succeed in a claim for copyright infringement, a person

6

must demonstrate "(1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011). In this case, Plaintiffs allege that the Prince Estate is the owner of all copyrights associated with musical works written by Prince. Plaintiffs also allege that they never authorized any Defendant to sell or distribute those works and that Defendants have infringed upon those copyrights through the sale and distribution of multiple compilations of Prince music. Alone, these allegations would be sufficient to establish a prima facie case of copyright infringement.

Plaintiffs' complaint, however, alleges facts that go far beyond the barebone elements necessary to prove a prima facie case of copyright infringement. Before filing suit, Plaintiffs conducted an extensive investigation into Defendants' bootlegging operation. Through this investigation, discussed in detail above, they were able to confirm the infringement of Prince copyrights by directly ordering music from the Eye Records label. Plaintiffs were also able to locate a number of social media profiles associated with Defendants that advertised the sale of bootlegged Prince music through Eye Records and able to identify names, e-mail addresses, and in one instance, a street address associated with those individuals. As pled, Plaintiffs have established an overwhelming chance of succeeding on the merits.

The strength of Plaintiffs' case is an important factor for determining whether good cause exists for early discovery. In many other cases, usually involving unlawful peer-to-peer file transfers, early discovery has been used "to harass and demand of defendants quick settlement payments, regardless of their liability." *SBO Pictures, Inc. v. DOEs 1-20*,

7

2012 WL 2034631 *1, No. 12-cv-3925 (S.D.N.Y. June 5, 2012). Courts must therefore exercise a "heightened degree of supervision" to ensure that a plaintiff is not using a barebones copyright infringement claim to "bludgeon" "hundreds of doe defendants" into "mass settlement." *In re BitTorrent Adult Film Copyright Infringement Cases*¸ 296 F.R.D. 80, 90 (E.D.N.Y. 2012). In this case, however, Plaintiffs have pled facts that show that each Defendant is an active participant in the bootlegging enterprise and that each Defendant has been responsible for the infringement of Plaintiffs' copyrights. Because of the level of detail in Plaintiffs' complaint and the depth of their investigation, it is clear that they are not using early discovery to pursue a quick payout from hundreds of unsuspecting defendants, but instead are seeking to protect their valuable intellectual property from a sophisticated bootlegging operation. Accordingly, this first factor weighs strongly in favor of expediated discovery.

The second factor – the specificity of Plaintiffs' requests – also weighs in favor of early discovery. Plaintiffs' requests are reasonably limited and tailored to the scope of their motion, particularly when compared to the type of discovery that would be expected in litigation like this following a Rule 26(f) conference. *See, e.g. John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) (denying motion to quash because the request seeks concrete and narrow information). Plaintiffs seek only the names, street addresses, e-mail addresses, phone numbers, IP logs, billing information, account creation dates, and the identification of financial institutions and accounts that are linked to different websites, social media profiles, or e-mail addresses. In addition, because Plaintiffs conducted an extensive investigation into this matter before bringing suit, Plaintiffs were able to identify

specific names, e-mail addresses, and social media accounts that were associated with the bootlegging enterprise. Plaintiffs' efforts go far beyond a typical case involving file-to-file sharing or internet bootlegging, where the party seeking early discovery often has only a list of IP addresses of the alleged infringers. *See, e.g.*, *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (seeking names and addresses of 176 John Doe defendants). IP addresses alone can pose problems, because the name registered to the IP address may not be the actual individual who engaged in the unlawful activity. *See id.* (noting in that case, that 30 percent of names turned over are not those who unlawfully downloaded or shared copyrighted material). The specificity of Plaintiffs' discovery requests, however, largely reduces that risk.

The third factor, with one exception, also weighs in favor of Plaintiffs, who need at least the names and street addresses of Defendants in order to pursue their claims. *See* Fed. R. Civ. P. 5; Convention of 15 November 1965 on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters; *see also Strike 3 Holdings, LLC v. Doe*, 2018 WL 2078707 *3, No. 18-cv-777, (D. Minn. May 4, 2018); *Strike 3 Holdings, LLC v. Doe*, 2017 WL 5001474 *4, No. 17-cv-1680 (D. Conn. Nov. 1, 2017) (authorizing subpoenas for name and street address in order to allow for service to be effected). In addition, e-mail addresses, IP logs, and telephone numbers could help Plaintiffs locate additional Doe Defendants and could identify, if necessary, other entities such as internet service or telephone providers that might have information about Defendants' names and street addresses.

9

Plaintiffs fail, however, to show good cause for the identification of financial institutions and accounts associated with the bootlegging enterprise. Though that information is relevant to Plaintiffs' claims, Plaintiffs do not show how it ultimately will allow them to more easily effect service, particularly compared to the other type of discovery that they seek. Thus, while Plaintiffs may request that information in discovery following the Rule 26(f) conference, it is not necessary for them to do so before Defendants have appeared in this matter.

The fourth factor weighs against Plaintiffs because they have not established that they exhausted all other alternative means to obtain the information they seek. The Digital Millennium Copyright Act ("DMCA") provides a "a statutory scheme for copyright holders to notify internet service providers of the existence of allegedly copyrighted material on their servers." *In re DMCA Subpoena to eBay, Inc.*, 2015 WL 3555270 *1, No. 15-cv-922, (S.D. Cal. June 5, 2015). It also allows a copyright owner to protect his or her rights under the DMCA by requesting "the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer." 17 U.S.C. § 512(h)(1). Upon receipt, the service provider is required to "expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena." *Id*. § 512(h)(5).

There are limits to the DMCA's subpoena authority. The clerk of court may issue the subpoena only if the service provider can both locate and remove the allegedly

infringing material. *In re Charter Commc'ns*, 393 F.3d at 776-77.[1] This is because the DMCA does not permit a copyright owner to serve a subpoena on a service provider that serves only as "a conduit for the transmission of materials by others." *Id*. at 777. The infringing material must be hosted by the service provider for a DMCA subpoena to issue. *See Maximized Living, Inc. v. Google, Inc.*, 2011 WL 6749017 *1, *6, No. C11-80061 (N.D. Cal. Dec. 22, 2011) (quashing DMCA subpoena on other grounds but noting that Google previously hosted internet blog that contained material that infringed on another's copyright).

Here, based on the current record, the Court cannot determine whether the DMCA is a viable alternative to expedited discovery. There is nothing in the record to establish whether any of the intended recipients of Plaintiffs' subpoenas host the infringing materials or social media accounts or whether those other entities merely serve as conduits "for the transmission of materials by others," as defined by the DMCA. *In re Charter Commc'ns*, 393 F.3d at 777. In addition, Plaintiffs do not reference the DMCA in their memorandum of law, much less argue that the subpoena power of the DMCA is unavailable to them. At this stage of litigation, where good cause must be shown for early discovery, Plaintiffs' failure to show that they considered and exhausted all other options must weigh against their request.

---

[1] Other courts have concluded that no subpoena, even one authorized by Rule 45, may be issued to a service provider unless expressly authorized by the DMCA. *See, e.g.*, *Strike 3 Holdings LLC, v. Doe*, 2018 WL 1924455 *2-*3, No. 18-cv-768 (D. Minn. Apr. 24, 2018). This Court, however, has an alternative analysis. Nothing in the DMCA suggests that all subpoenas, other than those described in 17 U.S.C. § 512(h)(1), are barred against service providers. In contrast, Rule 26(d)(1) allows for early discovery against "**any** source" if good causes exists (emphasis added). In addition, the Eighth Circuit has also endorsed the idea of using expedited discovery to identify anonymous "John Doe" defendants. *In re Charter Commc'ns*, 393 F.3d at 775 n. 3.

The final factor, Defendants' expectation of privacy, weighs in favor of Plaintiffs. Rule 26(g) does not provide any guidance as to how a civil litigant's expectation of privacy is determined when considering a motion for early discovery. But the primary reason for use of the five-factor analysis here is to protect Defendants' First Amendment rights, which include the right to speak anonymously. *Arista Records, LLC*, 604 F.3d at 118; *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43 (1995) (describing circumstances where anonymous speech is protected by the First Amendment). In addition, there are several other sources of federal law that help inform the Court's consideration of this issue. Constitutionally, the Fourth Amendment protects against unreasonable searches and seizures. *Smith v. Maryland*, 442 U.S. 735, 739 (1979). Statutorily, the Cable Privacy Act ("CPA") prohibits cable operators from disclosing "personally identifiable information" concerning one of its subscribers without first receiving that subscriber's consent. 47 U.S.C. § 551(c)(1). None of the above legal authorities dictate exactly how the Court must measure Defendants' expectation of privacy when considering a motion brought under Rule 26(g). But together, they help determine whether Plaintiffs' requests are so invasive as to render early discovery inappropriate or unfair.

In this case, analysis of the relevant sources of law establishes that Defendants have little-to-no expectation of privacy. First, while Defendants certainly have a right to anonymous speech under the First Amendment, their right to do so must be balanced against Plaintiffs' interest in protecting their intellectual property. *Arista Records, LLC*, 604 F.3d at 118. And as discussed throughout this order, Plaintiffs have conducted an extensive investigation that revealed the existence of an elaborate bootlegging conspiracy.

Plaintiffs have been able to link the bootlegging conspiracy to the various individuals, e-mail accounts, and social media profiles about which they seek discovery. Quite simply, Plaintiffs have alleged sufficient facts to show that Defendants have infringed upon, and will continue to infringe upon, intellectual property that is quite valuable. As a result, Defendants' First Amendment interests in protecting their anonymity is of no moment. Anonymity cannot be used to "mask copyright infringement." *Id*. A person has "little expectation of privacy" when he or she uses the internet to transmit information unlawfully. *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). In the context of this case, Defendants' expectation of privacy, as provided by the First Amendment, pales in comparison to Plaintiffs' interest in protecting their intellectual property.

In addition, though the Fourth Amendment can protect a person from an invasion of a "legitimate expectation of privacy," *Smith*, 442 U.S. at 740, that amendment has relatively little application in a civil matter like this. *See Syposs v. United States*, 181 F.R.D. 224, 227 (W.D.N.Y. 1998) (comparing standards for warrant issued under Fourth Amendment versus good cause standard under Rule 26); *but see Malibu Media, LLC v. Doe*, 2018 WL 2045998 *4-*5, 18-cv-590, (D. Conn. May 2, 2018) (finding Fourth Amendment principles relevant to determining person's privacy interests when considering motion for early discovery). But even if the Fourth Amendment did apply here, it would offer no protection to Defendants. A person cannot claim to have a legitimate expectation of privacy in information that he or she shares with others, such as a service provider or with the public through a social media profile. *See Smith*, 422 U.S. at 742 (concluding no

reasonable expectation of privacy in phone numbers dialed out or received). This includes subscriber information that a person provides to his or her internet service provider. *See United States v. Perrine,* 518 F.3d 1196, 1204-05 (10th Cir. 2008) (holding no expectation of privacy in acquisition of party's subscriber information, including IP address and name from third-party service providers because party voluntarily transmitted such information to Internet providers). Because any information that Plaintiffs obtain through their subpoenas will be information that Defendants voluntarily shared with another person or entity, Defendants can scarcely claim they have a reasonable expectation of privacy based on the Fourth Amendment.

Likewise, though civil subpoenas issued to cable operators are subject to the provisions of the CPA, that act also offers little protection to Defendants here. While the CPA prohibits the sharing of "personally identifiable information" absent a subscriber's consent, 47 U.S.C. § 551(c)(1), the act also allows for disclosure of that information when made pursuant to a court order and the service provider notifies the subscriber. *Id.* at § 551(c)(2)(B). Multiple courts have concluded that this subdivision is satisfied by a court order that authorizes the issuance of a subpoena under Federal Rule of Civil Procedure 45. *See Malibu Media, LLC*, 2018 WL 2045998 at *5; *Strike 3 Holdings, LLC v. Doe*, 2018 WL 324264 *3, No. 17-cv-2316 (S.D. Cal. Jan. 5, 2018); *Uber Tech., Inc. v. Doe*, 2015 WL 1926291 *2, No. 15–cv–00908 (N.D. Cal. Apr. 27, 2015). Thus, this statute is insufficient to conclude Defendants in this instance have a legitimate privacy interest that outweighs Plaintiffs' interest in early discovery.

Finally, two other factors reinforce the relatively little expectation of privacy that Defendants have here. First, as previously discussed, Plaintiffs seek information that is limited and reasonably tailored to the purpose of serving their complaint. They do not, for example, seek information about the content of any communications that Defendants may have had with one another or with their service providers, nor, with the exception of certain financial information, seek any other information that would more appropriately be obtained in discovery following a Rule 26(f) conference. In addition, to protect against the possibility that any Plaintiffs will obtain confidential or sensitive information through early discovery, the Court will use its discretion under the Federal Rules of Civil Procedure to require Plaintiffs to issue their subpoenas only in compliance with the terms and conditions set forth below so as to give Defendants an opportunity to appear and protect their interests. *See Lureen v. Doctor's Assocs., Inc.*, 2017 WL 4179995 *6, No. 17–cv–04016, (D.S.D. Sept. 20, 2017) (denying motion to quash subpoena while requiring that protective order be issued to govern information obtained from those subpoenas). Such an option allows Plaintiffs to pursue their case while mitigating, if not eliminating entirely, the risk that early discovery would pose to Defendants' privacy interests.

Second, Defendants' privacy interests are relatively minimal given the subject matter of this case. In other cases involving copyright infringement claims, such as potential patent trolling or salacious allegations of illicit pornographic downloads, courts have been much more cautious to authorize early discovery where a person's association with the copyrighted material might harm their reputation in their community or workplace and coerce them into an unreasonable settlement. *See In re BitTorrent*, 296 F.R.D. at 90

(noting that such considerations exist when "the theft of pornographic films" is alleged). But this "consideration is not present in infringement actions involving" popular music. *Id*. Therefore, while still necessary to scrutinize Plaintiffs' motion for the impact it will have on Defendants' privacy interests, the fact that Defendants are not accused of conduct relating to a topic that might cause them inherent social stigma or economic embarrassment further serves to mitigate any harm they might suffer from early discovery. *See id*. (discussing concern with early discovery related to downloading of pornographic works). In total, there is no legal or public policy authority the Court can identify, based on the circumstances and strength of this particular complaint, that would show Defendants' expectation of privacy outweighs Plaintiffs' interest in seeking relief through judicial process.

## III. CONCLUSION

The Court concludes that good cause exists for expedited discovery to proceed in this case. Though Plaintiffs have not established that they exhausted all other possible means to obtain the information that they seek, their failure to do so is not fatal to their motion. *See Arista Records*, *LLC*, 604 F.3d at 119 (stating that factors to be considered when evaluating a motion for expedited discovery are "an appropriate *general* standard" to apply) (emphasis added). The remaining factors weigh strongly in favor of Plaintiffs. To require Plaintiffs to seek subpoenas through the DMCA would add only unnecessary time and expense to this matter. Therefore, the Court will authorize expedited discovery for purposes of effecting service.

The Court will not, however, grant Plaintiffs' motion in its entirety. Instead, the Court will authorize Plaintiffs to seek information regarding only the names, street addresses, e-mail addresses, phone numbers, account creation dates, and IP logs associated with the accounts that they have identified. In addition, the Court will authorize the subpoenas only in accordance with the terms and conditions of the protective order as spelled out below. Should Plaintiffs find that they are still unable to obtain the information following service of this initial set of subpoenas, they may seek permission from this Court to serve subpoenas to other individuals or entities who may have discoverable information regarding Defendants' names and street addresses.

Therefore, based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Expedited Discovery (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Plaintiffs may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Microsoft, Google, Facebook, PayPal, MixCloud, SoundCloud, Yahoo!, Twitter, and any ISP that Plaintiffs identify as having discoverable information regarding Defendants. Plaintiffs may only request in each subpoena the information necessary to identify the names, street addresses, e-mail addresses, phone numbers, account creation dates, and IP logs associated with the accounts that Plaintiffs identify in their draft subpoenas (Exhibits F-M, O, ECF No. 9-1).

3. Plaintiffs must serve a copy of this Order together with each subpoena. The subpoena must set a date for production that is not less than 90 days from the date of the

subpoena. Nothing in this Order precludes any party that receives a subpoena pursuant to this Order from seeking a protective order through proper procedures if it determines there is a legitimate basis for doing so.

4. Within 21 days after service of the subpoena, each subpoena recipient must notify the users whose information is being sought that such information has been subpoenaed by Plaintiff. Notification may be made by any reasonable means, including by written notice sent to the user's last known address via first-class mail. Each recipient must provide a copy of this Order with the required notice to the user.

5. The user shall have 45 days from the date of the notice from the subpoena recipient to move to quash the subpoena. If the user files a motion to quash the subpoena within that time, Plaintiffs must immediately notify the subpoena recipient of that motion and that subpoena recipient shall not produce the information until the motion has been decided. In no event shall any subpoena recipient produce the requested information to Plaintiffs earlier than 90 days from the date of the subpoena.

6. Plaintiffs may use any information produced by a subpoena recipient only for the purpose of protecting and enforcing Plaintiffs' rights as set forth in its Complaint. This limitation on the use of the information will not expire absent further order of the Court.

7. All prior consistent orders remain in full force and effect.

8. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver

of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: December 13, 2018          *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Paisley Park Enterprises, Inc. et al. v. Ziani et al.*

Case No. 18-cv-2556 (DSD/TNL)